Curtis C. **FLOOD**, Plaintiff,

v.

Bowie K. **KUHN**, Individually and as Commissioner of Baseball, et al., Defendants.

No. 70 Civ. 202.

United States District Court, S. D. New York.

April 23, 1970.

See also D.C., 309 F.Supp. 793.

Paul, Weiss, Goldberg, Rifkind, Wharton & Garrison, New York City, Allan H. Zerman, Clayton, Mo., for plaintiff; Arthur J. Goldberg, Jay H. Topkis, Richard M. Moss, Daniel Levitt, Max Gitter, William D. Iverson, New York City, of counsel.

Donovan, Leisure, Newton & Irvine, New York City, Arnold & Porter, Washington, D.C., for defendant Bowie K. Kuhn; Paul A. Porter, William L. McGovern, Dennis G. Lyons, Douglas G. Robinson, Washington, D.C., George S. Leisure, Jr., John E. Tobin, New York City, of counsel.

Willkie, Farr & Gallagher, New York City, for all defendants except Bowie K. Kuhn; Louis F. Carroll, Mark F. Hughes, Louis L. Hoynes, Jr., Barry Rona, Robert J. Kheel, New York City, of counsel.

Baker, Hostetler & Patterson, Cleveland, Ohio, for defendant Joseph E. Cronin, President of American League of Professional Baseball Clubs, and all American League Clubs; Alexander H. Hadden, James P. Garner, Sargent Karch, Cleveland, Ohio, of counsel.

## OPINION

COOPER, District Judge.

Each defendant herein to the extent named in plaintiff's first four causes of action moves to dismiss such claims for lack of jurisdiction over the subject matter, for failure to state a claim upon which relief can be granted, and, as to the second and third causes of action only, for failure to join indispensable parties, pursuant to Rule 12(b) (1), (6) and (7), F.R.Civ.P. Both defendants named in the fifth cause of action move alternatively for dismissal of that claim on the first two of the above-stated grounds, or for summary judgment pursuant to Rule 56, F.R.Civ.P. Each of the first four causes of action attack baseball's reserve system. The fifth cause of action alleges certain unrelated antitrust violations on the part of two defendant baseball clubs.

### First Four Causes of Action

■ Turning first to the motions to dismiss the first four causes of action, dismissal on the pleadings for want of jurisdiction would be appropriate only if plaintiff's claims of federal jurisdiction were unsubstantial or frivolous. Cf. Bell v. Hood, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946). We cannot so hold. See generally, our Opinion herein filed March 4, 1970 denying plaintiff's motion for a preliminary injunction, 309 F.Supp. 793 (hereinafter "Opinion").

After considerable reflection we also conclude that any decision on the motions to dismiss for failure to state a claim must be deferred until trial. See Rule 12(d), F.R.Civ.P. With regard to the first cause of action alleging violation of the federal antitrust laws, plaintiff asserts grounds for overruling Toolson v. New York Yankees, Inc., 346 U.S. 356, 74 S.Ct. 78, 98 L.Ed. 64 (1953) which in our view raise serious questions of a factual nature. See Opinion. By the same token we are of the belief that defendants raise substantial issues of fact as to whether this matter is properly a labor dispute exempt from the antitrust laws.[1] Id. To obtain a clear view, the proper judicial course requires that these issues—important to all of organized baseball and of great public interest—not be resolved without full consideration of all the facts best adduced at trial. See 2A Moore, Federal Practice ¶ 12.16 at 2356 and 2357 (2d ed. 1968). See also, United States v. Central States Theatre Corp., 159 F.Supp. 552 (D.Neb.1957); Kaus v. Huston, 35 F.Supp. 327, 330 (N.D.Iowa 1940).

Further, we believe the trial must encompass the factual issues raised respecting the reserve system—hailed as a blessing by proponents; condemned as destructive by antagonists. We have ordered an early trial herein (May 19, 1970); the considerations which impelled that decision likewise weigh heavily in favor of developing all of the facts at one trial so as to avoid the possibility of piecemeal determinations and consequent delay. Additionally, exploration of the operation and effect of the reserve system is vital to any determination respecting plaintiff's fourth cause of action based on involuntary servitude. Potentially, it may also illuminate the

---

1. We are not satisfied that, as defendants contend, this matter is properly within the primary jurisdiction of the National Labor Relations Board. Assuming that the reserve system is a mandatory bargaining subject and that there is good faith bargaining thereon, nevertheless we believe the underlying issue of whether this is a labor dispute exempt from the antitrust laws is still present. See Opinion. In any event, this question is best resolved after a thorough inquiry at trial. See Montgomery Ward & Co. v. Schumacher, 3 F.R.D. 368, 370 (N.D. Cal.1944).

question of the continued vitality of baseball's judicially-derived antitrust exemption.[2] Cf. United States v. Central States Theatre Corp., *supra,* 159 F.Supp. at 555.

Accordingly, in light of the circumstances of this case we order that the hearing and determination of the defenses raised pursuant to Rule 12(b)(1), (6) and (7), F.R.Civ.P., be deferred until trial "to permit the Court to take a larger scope of vision than that merely stated in the pleading." Kaus v. Huston, 35 F.Supp. at 330. See United States v. Central States Theatre Corp., 159 F.Supp. at 554–555.

## Fifth Cause of Action in General

We are faced now with defendants' motions in the alternative for either dismissal or summary judgment in their favor as to plaintiff's fifth cause of action. It asserts two federal antitrust claims[3] unrelated to the reserve system: the first against the St. Louis National Baseball Club Inc. (St. Louis Club) and the second against the New York Yankees, Inc. (New York Yankees).

In light of the affidavits defendants submit and rely upon which are in no wise rebutted by plaintiff we believe it appropriate to direct our attention solely to the motion for summary judgment. Plaintiff in fact submits no papers whatever in opposition thereto. As to each of the two claims, he is in effect content to rest upon the facts set forth in defendants' affidavits filed herein and, to the extent not rebutted by such affidavits, the allegations of his complaint.

Applicable is Rule 56(e), F.R.Civ.P. which provides in part:

> "When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials in his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial."

At a conference held before us in chambers with all parties present on March 24, 1970, plaintiff's attorney stated with regard to the within motions:

> "We will not file an answering brief. * * * We will stand on what we filed." Transcript, March 24, 1970, p. 19.

Plaintiff files no statement pursuant to Rule 56(f), F.R.Civ.P., that affidavits in opposition are for any reason presently unavailable.

A week later at a similar conference held on March 31, plaintiff's counsel, at no time suggesting he wished to answer defendants' motions even as to the fifth cause of action (it had not been briefed in connection with plaintiff's earlier motion for a preliminary injunction), stated:

> "Now, I made an offer, and I should like to explicitly restate what the terms of the offer were. I did not say that I accepted the fact that there were no factual matters involved in the claim about CBS or the sale of beer or other matters. I said that for the purpose of expediting the trial, I am content to rely upon the facts as they said them. I might dispute those

2. Since the trial must in any event explore the reserve system we see no reason not to defer determination of defendants' motions as to the second and third cause of action for violations of state law. With regard to defendants' motion pursuant to Rule 12(b)(7), F.R.Civ.P. to dismiss for failure to join an indispensable party whose joinder would destroy diversity of citizenship, see Gibraltar Productions v. RKO Teleradio Pictures, 159 F. Supp. 457 (S.D.N.Y.1958) (deferring such

question until trial because of the issues of fact regarding indispensability).

3. We note that baseball's federal antitrust immunity appears to play no role where, as here, the violation claimed is unrelated to the maintenance of league structure; certainly so where outside business interests are the subject of the complaint as they are in this fifth cause of action. Cf. State v. Milwaukee Braves, Inc., 31 Wis.2d 699, 144 N.W.2d 1, 15 (1966).

facts, but I have the obligation particularly with respect to what is going on in the stadium in St. Louis with respect to beer sales, but I have read those affidavits, and I am perfectly content if there is an early trial, as your Honor has ordered, not to encumber the record with additional facts, because I find in the facts as stated there ample support for the cause of action we set forth."

Transcript, March 31, 1970, p. 16.

*First Claim of Fifth Cause of Action*

Defendants motions for summary judgment as to each of these distinct claims are treated separately. As to the first, plaintiff's complaint alleges that the St. Louis Club derives substantial revenues from concession sales in its baseball stadium, a large portion of which are of beer; that the St. Louis Club through a parent corporation is engaged in the production, distribution and sale of beer; that said club has limited the sale of beer in the stadium concession to that produced by the affiliated company and has excluded all other beer companies from selling or attempting to sell beer through concession sales in the stadium—all in violation of the Sherman and Clayton Anti-Trust Acts; that the effect of this violation has been, and will continue to be, to increase the revenues of the beer company and diminish the revenus of said ball club

available for player salaries (including that of plaintiff).[4]

Defendant St. Louis Club submits the affidavit of its Vice President and General Manager, Vaughan P. Devine, dated January 29, 1970. He acknowledges that the St. Louis Club is in effect wholly-owned by Anheuser-Busch, Inc., which is engaged in the production, distribution and sale of beer. He states, contrary to plaintiff's allegations, that "the beers sold at the St. Louis ballpark are not limited to beers produced by Anheuser-Busch." Rather, two of the four beers sold at the ballpark are produced by companies in which neither the St. Louis Club nor Anheuser-Busch has any ownership or other interest whatsoever.

Of foremost importance with regard to plaintiff's claim, affiant Devine avers:

"The right to sell beer within the St. Louis ball park is given to a concessionaire completely independent of Defendant, St. Louis National Baseball Club, Inc. and completely independent of Anheuser-Busch, Incorporated, by a contract between the concessionaire and the owner of the St. Louis ball-park, Civic Center Redevelopment Corporation.

7. Defendant, St. Louis National Baseball Club, Inc. derives no revenue whatever from any concession sales, including sales of beer, in the St. Louis ball park. Its revenues are

4. The complaint in this regard alleges in full:

"45. As part of its business of staging baseball games, defendant St. Louis National Baseball Club, Inc. derives substantial revenues from concession sales in its baseball stadium. On information and belief, a substantial portion of such revenues from concession sales are derived from the sale of beer. 46. Through a subsidiary, affiliate or parent corporation, defendant St. Louis National Baseball Club, Inc. is also engaged in the production, distribution, and sale of beer. On information and belief, by means of various contracts, agreements, and combinations, defendant St. Louis National Baseball Club,

Inc. has limited the sale of beer in the stadium concession sales to the beer produced by the affiliated company, and has excluded all other beer companies from selling or attempting to sell beer through concession sales in the stadium, in violation of §§ 1 and 2 of the Sherman Anti-Trust Act and § 3 of the Clayton Anti-Trust Act (15 U.S.C. §§ 1, 2, and 14). 47. On information and belief the effect of this violation has been, and will continue to be, to increase the revenues of the beer company and diminish the revenues of defendant St. Louis National Baseball Club, Inc. available for player salaries, including that of plaintiff."

completely independent of and have no connection with any such concession sales; and no matter what beers are sold in the St. Louis ball park, Defendant, St. Louis National Baseball Club, Inc. does not participate in the revenue."

Affidavit of Vaughan P. Devine, January 29, 1970, ¶¶ 6 and 7.

Plaintiff does not dispute that this affidavit satisfies the evidentiary standards of Rule 56(e), F.R.Civ.P.

As we see it, plaintiff's allegations have been fatally undercut by the sworn statements in this affidavit. And so defendant St. Louis Club is entitled to summary judgment in its favor on this fifth cause of action. See generally, H. Daroff & Sons, Inc. v. Strickland Transportation Co., 284 F.Supp. 510 (E.D.Pa. 1968).

■ Plaintiff seeks only injunctive relief for this alleged federal antitrust violation, presumably pursuant to 15 U.S.C. § 26. In order to bring suit as a private party under that section, plaintiff must show not only a violation of the antitrust laws, but also "threatened loss or damage" by virtue of said violation. 15 U.S.C. § 26. See United States v. Borden Co., 347 U.S. 514, 518, 74 S.Ct. 703, 98 L.Ed. 903 (1954); Beegle v. Thomson, 138 F.2d 875, 881 (7th Cir. 1943). While plaintiff need not show actual injury suffered, he must "demonstrate a significant threat of injury from an impending violation of the antitrust laws or from a contemporary viola-

tion likely to continue or recur." Zenith Radio Corp. v. Hazeltine Research Inc., 395 U.S. 100, 130, 89 S.Ct. 1562, 1580, 23 L.Ed.2d 129 (1969). Additionally, it appears that "the injury must be 'direct,' not 'incidental.'" See S.C.M. Corp. v. Radio Corp. of America, 276 F. Supp. 373, 376–378 (S.D.N.Y.1967), aff'd 407 F.2d 166 (2d Cir.), cert. denied 395 U.S. 943, 89 S.Ct. 2014, 23 L. Ed.2d 461 (1969).

■ Based upon the unrebutted affidavit submitted by defendant St. Louis Club, plaintiff has not suffered and is not threatened with suffering any injury, direct or incidental, by virtue of any claimed antitrust violation respecting the beers sold in the St. Louis ball park.[5] The concessionaire is wholly independent of the St. Louis Club and of Anheuser-Busch; its contract is with the stadium owner; the St. Louis Club does not participate at all in any revenues derived from concession sales. Thus, there being no genuine issue of material fact between the parties and it appearing that the St. Louis Club's revenues were in no way affected by the beer concession sales, plaintiff lacks standing to maintain this action.[6] Accordingly, we need not consider the further question of whether plaintiff's underlying antitrust claim that all other beer companies have been excluded has been wholly vitiated by defendants' unrebutted averment that the beer of two companies other than Anheuser-Busch is sold at the ball park.

---

5. Plaintiff has not alleged or even suggested that the St. Louis Club agreed with the concessionaire and/or the stadium owner not to seek any share in concession revenue in return for the sale by the concessionaire of Anheuser-Busch beer. In fact, his complaint alleges that the ball club does derive substantial revenue from concession sales. We believe it inappropriate for us to engage in undue speculation as to what claims plaintiff *might* have made which might not be undercut by defendants' present affidavit, since, as we see it, none have been made and as far as we know none fairly could

be made. On the state of the record before us there are no triable issues of fact between the parties. Plaintiff in fact appears content to rest his entire case in this regard upon defendants' affidavit.

6. We believe this is so even under the broadest criteria for standing:
    "there must in addition [to adversary interest] be some connection between the official action challenged and some legally protected interest of the party challenging that action." Jenkins v. McKeithen, 395 U.S. 411, 423, 89 S.Ct. 1843, 1850, 23 L.Ed.2d 404 (1969).

**410**

*Second Claim of Fifth Cause of Action*

Plaintiff's second claim asserted against the defendant New York Club alleges in full:

"48. Defendant New York Yankees, Inc. are owned by the Columbia Broadcasting System, one of the three national radio and television networks which might bid on the right to broadcast professional baseball games. On information and belief, as a result of its ownership of the New York Yankees, Inc., the Columbia Broadcasting System has refrained from bidding on such broadcast rights with consequent injury to competition, in violation of §§ 1 and 2 of the Sherman Anti-Trust Act and § 7 of the Clayton Anti-Trust Act (15 U.S.C. §§ 1, 2, and 18).

49. The consequence of this violation has been and continues to be, to reduce the revenues of Organized Baseball from the sale of broadcast rights, in which revenues players such as plaintiff would share."

Defendant New York Yankees in opposition submit the affidavit of William C. MacPhail, Vice-President Sports for CBS Television Network, a division of Columbia Broadcasting System, Inc. (CBS), dated January 27, 1970. It seems to us that the heart of plaintiff's claim—that CBS has refrained from bidding on broadcast rights to professional baseball games—is stopped by the unrebutted factual allegations of this affidavit.

Thus, affiant MacPhail avers:

2. On October 19, 1965, at the O'Hare Inn in Chicago, Illinois, I appeared before the Major League Baseball Television Committee and presented to such Committee CBS' bid in the amount of $6,000,000 per year for the television and radio broadcasting rights to the World Series and All Star Game for the years 1967 and 1968 and $2,000,000 per year for the national television rights to the Saturday Game of the Week for the years 1966, 1967, and 1968. This bid was not accepted by the Committee. This was the first and only opportunity for CBS to bid for such broadcasting rights after CBS acquired control of New York Yankees Inc.

3. CBS has made no subsequent bids for broadcasting rights to these events inasmuch as I was informed by members of the Committee that the original contract with National Broadcasting Company, the successful bidder, had been extended through the year 1971 pursuant to a first negotiation clause contained in such contract."

Affidavit of William C. MacPhail, January 27, 1970.

Again, plaintiff does not dispute that this affidavit satisfies the evidentiary standards of Rule 56(e), F.R.Civ.P.

■ As we have seen, plaintiff is content to allow the factual allegations contained in defendants' affidavits— which strike at the core of the claim he asserts—to go unrebutted and, thus, admitted for purposes of the motion for summary judgment.[7] Indeed, he expresses his willingness to rest upon them at trial. Accordingly, there being no genuine factual dispute between the parties on the record before us, summary judgment in favor of defendant New York Yankees is appropriate and hereby ordered. We need not consider defendants' further contention that assuming an antitrust violation existed as claimed, nevertheless plaintiff's threatened injury, if any, is incidental and not direct, and, thus, lacking any causal connection between offense and injury, he lacks standing to sue. See generally, S.C.M. Corporation v. Radio Corporation of America, *supra.*

---

7. Plaintiff having chosen to rest upon his complaint, it is not for the Court to speculate whether plaintiff might have alleged that although CBS did not "refrain" from bidding, its bid was not entered competitively and in good faith. No such claim ever having been made, we believe it only fair to conclude that there is no triable issue of fact raised in that regard.

## Conclusion

In summary, for the reasons set forth above defendants' motions to dismiss plaintiff's first four causes of action which contest the legality of baseball's reserve system are deferred until the trial; defendants' motion for summary judgment in favor of defendants St. Louis National Baseball Club, Inc. and New York Yankees, Inc. on both claims of plaintiff's fifth cause of action is granted.

This shall be considered an order; settlement thereof is unnecessary.