The PHILADELPHIA HOUSING AU-
THORITY et al., Plaintiffs,

v.

AMERICAN RADIATOR & STANDARD
SANITARY CORPORATION et al.,
Defendants.

MARICOPA COUNTY, Plaintiff,

v.

AMERICAN RADIATOR & STANDARD
SANITARY CORPORATION et al.,
Defendants.

The STATE OF ARIZONA et al.,
Plaintiffs,

v.

AMERICAN RADIATOR & STANDARD
SANITARY CORPORATION et al.,
Defendants.

Civ. A. Nos. 41773, 69–1779 and 69–1439.

United States District Court,
E. D. Pennsylvania.

Dec. 14, 1970.

See also D.C., 322 F.Supp. 834.

Moise Berger, County Atty., and Ronald W. Meyer, Deputy County Atty., Phoenix, Ariz., for plaintiff Maricopa County.

Mark I. Harrison and Harrison, Strick, Myers & Singer, Phoenix, Ariz., for plaintiffs State of Arizona and others.

Fred A. Freund and Kaye, Scholer, Fierman, Hays & Handler, New York City, for defendants.

George F. Sieker, Asst. Atty. Gen., Madison, Wis., for State of Wisconsin, amicus curiae.

Thomas W. Mack, and Dickstein, Shapiro & Galligan, Washington, D. C., for States of Texas, Louisiana, and others, amici curiae.

Jerrold E. Salzman and Freeman, Schmetterer, Freeman & Salzman, Chicago, Ill., for States of Illinois, Indiana and others, amici curiae.

Lynn G. Truesdell, III, Sp. Asst. Atty. Gen., and Richards, Montgomery, Cobb

& Bassford, Minneapolis, Minn., for State of Minnesota, amicus curiae.

HARVEY, District Judge:

In Mangano v. American Radiator & Standard Sanitary Corporation,[1] 50 F.R.D. 13 (E.D.Pa.1970), Chief Judge Lord in this same multidistrict litigation granted defendants' motion to dismiss the treble damage antitrust complaint filed by certain homeowners against the defendant manufacturers. Appeals are currently pending before the United States Court of Appeals for the Third Circuit in four separate cases dismissed by Chief Judge John Lord for reasons stated in that opinion.[2] Judge Lord held in Mangano that as a matter of law such homeowners were too remote in the chain of distribution to recover damages as a result of allegations that the prices of plumbing fixtures in their homes had been illegally fixed by the defendant manufacturers.

Presently before the Court are two motions filed by defendants which raise questions similar to those dealt with by Judge Lord in Mangano. In both of the cases in which these motions have been filed, the plaintiffs are public bodies which contracted to construct public buildings within their respective jurisdictions. The same questions therefore are raised in these motions as were before the Court in Mangano except that here public bodies instead of individual homeowners are involved and here the plumbing fixtures sold by the defendants through middlemen were eventually incorporated into public structures rather than into private homes.[3]

The factual basis for Judge Lord's decision in Mangano was established as a result of his conclusion that the plaintiffs had failed to file full and complete answers to interrogatories. Invoking Rule 37(b) (2) (ii), F.R.Civ.P., Judge Lord, in reaching his ultimate conclusion that the plaintiffs' claims should be dismissed because of the applicable substantive law, presumed the following facts (50 F.R.D. at 19):

"(1) That each of the present plaintiffs bought a house containing plumbing fixtures rather than plumbing fixtures as such.

"(2) That the present plaintiffs did not make their purchases pursuant to a preexisting cost-plus contract or analogous fixed markup type of arrangement."

Presently before the Court is one motion for summary judgment and one motion for partial summary judgment, both motions having been filed under Rule 56, F.R.Civ.P.[4] The defendants contend

---

1. The master case in this multidistrict litigation, containing the docket entries in all of the consolidated cases, is known as Philadelphia Housing Authority v. American Radiator & Standard Sanitary Corporation, Civil No. 41773. The homeowners' case, which was dismissed for the reasons stated in Judge Lord's opinion was filed as Mangano v. American Radiator & Standard Sanitary Corporation, Civil No. 69–861. To avoid confusion with other opinions filed in this same litigation. Judge Lord's opinion, reported at 50 F.R.D. 13, will be referred to hereinafter as Mangano.

2. These appeals have been docketed in the United States Court of Appeals for the Third Circuit as Nos. 19,171, 19,172, 19,-173, and 19,174.

3. Orders have previously been entered by Judge Lord in this litigation also dismissing the claims of owners of commercial buildings (Civil No. 69–180) and the claims of the owners of apartment buildings (Civil No. 69–182) for all the reasons set forth in his opinion in Mangano. Another order dismissed the claims of homebuilders (Civil No. 69–181) pursuant to Rule 37(b) (2) (iii) and 37(d) of the Federal Rules of Civil Procedure, for only the reasons stated in the opinion at 50 F.R.D. 15–19. These three cases, together with Civil No. 69–861, make up the four cases presently on appeal.

4. In the case filed by Maricopa County, Arizona (Civil No. 69–1779), defendants' motion seeks summary judgment as to all the claims filed. In the case filed

that the undisputed facts established by affidavits, answers to interrogatories and responses to requests for admission indicate that as a matter of law these plaintiffs' claims, like those in *Mangano*, must be dismissed.[5] Essentially then, there are two questions now before the Court as follows:

1. Whether *Mangano* should now be followed by this Court, and if so,

2. Whether the principles stated in that case should be applied not only to claims asserted by the owners of private homes containing plumbing fixtures manufactured by defendants, but also under the facts here to the claims of the owners of public buildings containing such fixtures.

 The first question is readily susceptible of answer. As an earlier decision by this Court in this very same multidistrict litigation, *Mangano* establishes the law of this case. The rule of the law of the case is a rule of practice, based upon the sound policy that when an issue is once litigated and decided, that should be the end of the matter United States v. United States Smelting Refining & Mining Co., 339 U.S. 186, 198, 70 S.Ct. 537, 94 L.Ed. 750 (1950); Insurance Group Committee v. Denver & Rio Grande W. R. Co., 329 U.S. 607, 612, 67 S.Ct. 583, 91 L.Ed. 547 (1947). This principle is particularly applicable to multidistrict litigation in which the presence of a large number of diverse parties might otherwise result in constant relitigation of the same legal issues. Nor is there any apparent reason why the rule of the law of the case

should not be applied merely because a different judge has now been assigned to this litigation.[6]

In his opinion, Judge Lord discussed comprehensively and carefully the principles which control the issues presently before the Court. He reviewed in detail the Supreme Court and other decisions leading up to the landmark case in this area of the law, namely, Hanover Shoe, Inc. v. United Shoe Machinery Corp., 392 U.S. 481, 88 S.Ct. 2224, 20 L.Ed.2d 1231 (1968). After analyzing and quoting extensively from *Hanover*, Judge Lord concluded that the *Hanover* rationale applies not only when a manufacturer defendant asserts a pass-on defense to the claim of an initial purchaser but also to a claimant at the end of a chain of distribution who is faced with precisely the same problems of proof not by way of defense but as a part of its affirmative claim.

No good purpose would now be served if this Court were to undertake to re-examine the authorities and the arguments in support of and in opposition to Judge Lord's ruling. The *Mangano* decision is now on appeal before the Third Circuit Court of Appeals.[7] If the Third Circuit (or ultimately the Supreme Court) modifies or reverses *Mangano*, undoubtedly such decision will require revisions in this Court's present ruling, based as it is on the law established by the District Court opinion.

Moreover, there are no cases decided since *Mangano* which would suggest that this Court should now reach a different result. On the contrary, the opinions

by the State of Arizona itself (Civil No. 69–1439), defendants' motion for partial summary judgment is directed at all claims in that action except those asserted on behalf of housing authorities within the State.

5. Various *amicus curiae* briefs in opposition to these motions have been filed on behalf of other states and public bodies which are parties to this litigation. Counsel for a number of these *amici* participated in the argument on the pending motions.

6. By Order of the Judicial Panel on Multidistrict Litigation dated June 26, 1970, these consolidated cases were reassigned to the undersigned judge for further proceedings under 28 U.S.C. § 1407.

7. Briefs have been filed by both appellants and appellees and copies of such briefs have been furnished to this Court. No date for argument has as yet been set.

which have been filed since April 6, 1970, seem to have interpreted *Hanover* in a manner consistent with the views expressed by Judge Lord in *Mangano*. In United Egg Producers v. Bauer International Corp., 312 F.Supp. 319, 321 (S. D.N.Y., April 27, 1970), the Court, citing *Hanover*, held that ultimate consumers are not within the economic class with standing to sue in a treble damage action "where the direct injury, if any, falls on the primary buyer in the chain of distribution and cannot be passed on to the ultimate consumer." In West Virginia v. Chas. Pfizer & Co., Inc., 314 F.Supp. 710, 745–746 (S.D.N.Y., June 24, 1970), Judge Wyatt observed that it was highly doubtful whether wholesalers or retailers in that multidistrict case suffered any damage at all, because their purchases and sales were like the cost-plus contracts which were recognized as an exception to the *Hanover* rationale. This Court in Philadelphia Housing Authority v. American Radiator & Standard Sanitary Corporation, 323 F.Supp. 364 (E.D.Pa., September 24, 1970), noted that *Hanover* as interpreted by subsequent decisions, was "an obstacle to plaintiffs in a treble damage action who are somewhere in the middle of a chain of distribution and who therefore must prove that an overcharge was passed on to them but not by them."

In asking this Court to decline to follow the *Mangano* decision, the plaintiffs rely on the following cases which were not cited or discussed in that opinion: State of Washington v. General Electric Co., 246 F.Supp. 960 (W.D.Wash.1965); State of Missouri v. Stupp Bros. Bridge & Iron Co., 248 F.Supp. 169 (W.D.Mo. 1965); State of Washington v. American Pipe & Const. Co., 274 F.Supp. 961 (W.D.Wash.1967); Armco Steel Corp. v. State of North Dakota, 376 F.2d 206 (8th Cir. 1967). Three of these cases involve facts which make them distinguishable from the cases presently before this Court. More importantly, however, all four of these cases were decided before *Hanover*. One cannot read the *Hanover* opinion without reaching the conclusion that it represents a careful exposition of principles of antitrust law which had not theretofore been clearly articulated. The language used by Mr. Justice White indicates that *Hanover* was intended to be of general application and cannot be, as argued here by plaintiffs, limited solely to the precise facts there involved.

For these reasons, this Court concludes that *Mangano* should be followed and applied here. That decision is the law of this case and has not to date been overruled or modified, either directly or by implication.

■ The next question is whether under the undisputed facts here these particular plaintiffs are, as in *Mangano*, too remotely placed in the chain of the distribution of the plumbing fixtures in question to be permitted to recover as a matter of substantive law. The basis of the claims of each of the plaintiffs in *Mangano* rested on the following premises (50 F.R.D. at 19–20):

"1) When the wholesaler purchased the plumbing fixtures ultimately used in the construction of that plaintiff's house, the price paid included an unlawful overcharge.

"2) When the wholesaler sold those plumbing fixtures to the plumbing contractor, it passed on the overcharge to the latter.

"3) When the plumbing contractor sold those plumbing fixtures to the builder who constructed plaintiff's home, it passed on the overcharge to the builder.

"4) When the builder incorporated those plumbing fixtures in the home it constructed, it passed on the overcharge to the purchasing homeowner.

"5) Where the plaintiff homeowner bought his home from a prior homeowner, that such prior homeowner passed the overcharge on to the plaintiff."

The fifth premise mentioned by Judge Lord was not necessary to his ultimate decision inasmuch as he dismissed the claims asserted by the owners of homes who had acquired these structures new from builders as well as the claims of those who had purchased homes from a prior homeowner. The factual determination that must now be made is whether on the record here these public bodies eventually came to own the plumbing fixtures in question in the same or a similar manner as described by Judge Lord in premises 1 through 4.

From the affidavits, answers to interrogatories and responses to requests for admission on file in these cases, it is apparent that there is no genuine dispute as to any of the material facts necessary to decide the pending motions. The conclusion is inescapable here that insofar as the issue before this Court is concerned, there is no essential difference between the public body plaintiffs, whose claims are under attack in this proceeding, and the homeowner plaintiffs whose claims were dismissed in *Mangano*. Both sets of plaintiffs in effect purchased buildings containing plumbing fixtures rather than plumbing fixtures themselves. In this instance as in the homeowners case, wholesalers purchased the plumbing fixtures in question from the defendant manufacturers and sold such fixtures to plumbing contractors. While in *Mangano* the plumbing contractors in turn included the furnishing and installation of such fixtures in their subcontracts with builders or developers, here there were subcontracts with general contractors which constructed the buildings in question under contracts with the public body owners. This slight difference is not material for a determination of the legal questions presently before the Court. What is significant is that the plumbing fixtures in plaintiffs' buildings, just as in *Mangano,* passed through successive unrestrained markets with independent pricing decisions having been made at each different level. Accordingly, the

plaintiffs here have the same problems of proof as did the plaintiffs in *Mangano.*

Under these circumstances, this Court concludes that these public body plaintiffs are under the *Mangano* rationale simply too remote in the chain of distribution to be permitted as a matter of law to recover from price-fixing manufacturers. As Mr. Justice White said in the *Hanover* case (392 U.S. at 493, 88 S.Ct. at 2231), the problems of proof under circumstances such as those present here are "nearly insuperable" and would require "a convincing showing of each of these virtually unascertainable figures," a task which "would normally prove insurmountable." As plaintiffs occupying the level of the chain of distribution that these plaintiffs occupy cannot for the reasons stated in *Mangano* prove that they were injured in their business or property, their claims must be dismissed.

The undisputed facts in the record here establish that the present plaintiffs contracted not for the purchase of plumbing fixtures themselves but for the purchase of public buildings containing plumbing fixtures. The facts also establish that these plaintiffs did not make their purchases of the buildings under a preexisting cost-plus contract or analogous type of arrangement. Indeed, in these cases, it is even clearer than in the homeowner cases that no cost-plus type arrangement was involved. The public bodies here entered into contracts for their finished structures as a result of sealed bids submitted by general contractors and not as a result of negotiated prices. The requirement that competitive bids be submitted necessarily demands that the contractor bear the full risk if prices are inaccurately estimated. Such an arrangement is distinctly different from the cost-plus type of contract which might permit the tracing to an end user of the increased prices paid for the fixtures in question. The facts here then do not fall within the exception noted by Mr. Justice White in *Hanover* (392 U.S. at 494, 88 S.Ct. 2224).

Plaintiffs contend that in building contracts of the type involved here the material costs of plumbing fixtures remain fixed and invariable and that only labor, administrative costs and other factors are the variables in the price of the completed structure. Based on this premise, plaintiffs argue that they would be able to prove damages which resulted from the initial illegal overcharge by the manufacturer and which was then passed on to the end user. The simple answer to this argument is that it would likewise apply to homeowners. For the reasons stated by Judge Lord in *Mangano*, there is no merit to this contention. In *Mangano* (50 F.R.D. at 25), the following language from the *Hanover* opinion was quoted with emphasis:

> "A wide range of factors influence a company's pricing policies. Normally the impact of a single change in the relevant conditions cannot be measured after the fact; indeed a businessman may be unable to state whether, had one fact been different (a single supply less expensive, general economic conditions more buoyant, or the labor market tighter, for example), he would have chosen a different price. Equally difficult to determine, in the real economic world rather than an economist's hypothetical model, is what effect a change in a company's price will have on its total sales. Finally costs per unit for a different volume of total sales are hard to estimate. Even if it could be shown that the buyer raised his price in response to, and in the amount of, the overcharge and that his margin of profit and total sales had not thereafter declined, there would remain the nearly insuperable difficulty of demonstrating that the particular plaintiff could not or would not have raised his prices absent the overcharge or maintained the higher price had the overcharge been discontinued." (392 U.S. at 493, 88 S.Ct. at 2231).

Judge Lord then went on to say this (50 F.R.D. at 25–26):

> "All of the difficulties referred to by the Supreme Court with respect to tracing the impact of an overcharge are present in the instant case, and most to a much greater extent than in *Hanover*. Assuming that the price paid by the wholesaler to the manufacturer contained an unlawful overcharge, claims of the present plaintiffs rest, as has been indicated, at the very least on the following additional premises: (a) that the overcharge was then passed on by the wholesaler to the plumbing contractor; (b) that the plumbing contractor then passed the overcharge on to the builder; (c) that the builder passed on the overcharge to the purchasing homeowner; (d) in the case of used houses, each prior homeowner passed the overcharge on to the present plaintiffs. Each of these steps represents activity in a completely new and unrestrained market. * * * If the Supreme Court regarded the figures underlying corresponding assumptions as 'virtually unascertainable' and applied such adjectives as 'insuperable' and 'insurmountable' to any attempt to support them in that case, it certainly follows *a fortiori* that insuperable difficulties inhere in the premises underlying the claims at issue in the instant case. Accordingly, the Court agrees with defendants that the claims of the plaintiffs under consideration in their capacity as homeowners are blocked by insurmountable difficulties of proof."

Plaintiffs claim that the facts here concerning the construction of these public buildings are different and distinguishable from those presented in *Mangano* concerning the construction of the private buildings there. It is argued that unlike a home a school building is specially designed with exact space and equipment specified and that precise specifications for the plumbing fixtures

are included in the construction documents. Assuming that the specifications for a school or other public building may be more precise than those for a home, the record here does not indicate that the problems of proof with reference to the plumbing fixtures concerned are thereby lessened in any way. Plaintiffs' answers to interrogatories disclose that the plumbing fixtures were installed as a part of the overall contract with the general contractor, that their cost was included as a part of the total contract price which was arrived at by means of sealed bids and that payment of the total contract price covered all the construction work including plumbing fixtures installed and in place. Under these circumstances, the public bodies here purchased completed structures in the same way that homeowners in *Mangano* purchased completed houses. The record here in no way supports plaintiffs' contention that these public body plaintiffs contracted for the purchase of plumbing fixtures when they accepted contractors' bids for construction of the public buildings in question.

This Court is not here attempting to decide any issues other than those presently before it in these motions. Whether other plaintiffs at different levels of the chain of distribution are similarly foreclosed from asserting their claims must necessarily depend upon the particular facts pertaining to such plaintiffs' purchase of the plumbing fixtures in question or of the structures that incorporate such plumbing fixtures. What is decided here is that on this record the public body plaintiffs in these two cases stand in exactly the same position as did the homeowners, owners of apartments and owners of commercial buildings whose claims have previously been dismissed.[8] Applying the *Mangano* rationale here, the claims of such public body plaintiffs must likewise be dismissed.

For these reasons, defendants' motions for summary judgment and for partial summary judgment are hereby granted.

---

8. Of course, the Court's present ruling would apply to other public body claimants which contracted in the same or a similar manner as did these plaintiffs for the construction of public buildings containing plumbing fixtures.