**In re Coordinated Pretrial Proceedings in ANTIBIOTIC ANTITRUST ACTIONS.**

**M 19–93A**

**and the following actions:**

**68 Civ. 2370, 68 Civ. 4264, 69 Civ. 1556, 69 Civ. 1558, 69 Civ. 1559, 69 Civ. 3194, 69 Civ. 4261, 70 Civ. 1409, 69 Civ. 3899, 69 Civ. 5684, 70 Civ. 367, 69 Civ. 1557, 69 Civ. 3772, 69 Civ. 4026, 69 Civ. 4909, 70 Civ. 5590, 69 Civ. 5032, 69 Civ. 5574, 69 Civ. 5683, 69 Civ. 5685, 70 Civ. 477, 70 Civ. 677 and 70 Civ. 1306.**

United States District Court.

S. D. New York.

April 13, 1971.

MISCELLANEOUS ORDER NO. 71–11

## MEMORANDUM AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AS TO THOSE CLAIMS BASED ON PURCHASES OF FINISHED ANIMAL FEED PRODUCTS

MILES W. LORD, District Judge (By Assignment).

Pursuant to this court's order of February 19, 1971 (Misc. Order No. 71–6), the defendants have moved for dismissal, summary judgment, or partial summary judgment in several of the actions involved in this multidistrict litigation on the grounds that certain of the claims involved in them are too remote or that the parties asserting them lack standing to do so. The majority of these motions were filed in the "human consumption cases" but one such motion was filed in the "farm cases."

The defendants have moved for summary judgment with respect to all claims "which are based on the purchase of finished animal feed products not in the form originally sold by defendants." The motion was not directed to, nor is this order concerned with, claims resulting from purchases, however indirect or remote, of antibiotic drugs in a form substantially similar to that distributed by the defendants.

■■ It is axiomatic that a district court must proceed with extreme caution in granting motions for summary judgment in private treble damage actions. Norfolk Monument Company v. Woodlawn Memorial Gardens, Inc., 394 U.S. 700, 704, 89 S.Ct. 1391, 22 L.Ed.2d 658 (1969). It is equally clear however where there are no material facts in dispute or where plaintiffs cannot recover on their claims *as a matter of law,* dismissal or summary judgment is appropriate. Daily Press v. United Press International, 412 F.2d 126 (6th Cir. 1969), Jones v. Borden Company, 430 F.2d 568 (5th Cir. 1970), Beckman v. Walter Kidde & Co., 316 F.Supp. 1321 (E.D.N.Y.1970), Flood v. Kuhn, 312 F. Supp. 404 (S.D.N.Y.1970).

■ At the hearing held in San Francisco on March 23, 1971, counsel for the affected farm plaintiffs argued strenuously that if they could establish that the alleged conspiracy had an impact, however remote or uncertain, on the price of finished animal feed products, their clients had a right to maintain their actions under the federal antitrust laws subject only to the requirement that they later establish the *amount* of their damages with the requisite degree of certainty.

When faced with a similar factual situation in the *Plumbing Fixture Cases,* Chief Judge John Lord and Judge Alexander Harvey II both held that persons who purchase the product involved in the alleged conspiracy as a minor component of an entirely different product (there plumbing fixtures and houses) lack standing or are too remote to maintain their antitrust actions unless it is clear that the higher persons in the chain of distribution "passed-on" the alleged overcharge through pre-existing cost-plus contracts or other analogous fixed markup arrangements. Philadelphia Housing Authority v. American Radiator & Standard Sanitary Corp., 50 F.R.D. 13 (E.D. Pa.1970); Maricopa County v. American Radiator & Standard Sanitary Corp., 323 F.Supp. 381 (E.D.Pa.1971). Judge Lord's decision dismissing the claims of homeowners who purchased homes containing plumbing fixtures has since been affirmed *per curiam* by the Third Circuit. Mangano v. American Radiator & Standard Sanitary Corp., 438 F.2d 1187 (3d Cir. 1971).

The plaintiffs' affidavits in the present case establish only (1) that some types of animal feed (therapeutic grade) contained as much as 200 grams of terramycin per ton of feed, (2) that the cost of the non-antibiotic ingredients in finished animal feed has remained fairly constant in the past seventeen years; and (3) that the price of finished animal feed varies with the amount of terramycin incorporated in it. These affidavits do not refute the fact that the plaintiffs asserting these claims did not purchase antibiotic drugs in the form

sold by the defendants nor do they tend to establish that the manufacturers and distributors of medicated animal feed containing antibiotic drugs "passed along" any illegal "overcharge" in the cost of the terramycin by a pre-existing cost-plus contract or other analogous fixed mark-up arrangement. Instead, the facts suggest that the antibiotic product, once incorporated in the finished feed, passed through a second market composed of apparently competitive sellers, obscuring any effect the alleged antibiotic drug conspiracy might have had on the price of finished feed. The difficulty of plaintiff's case is greatly increased by the problems of competition, price determination, advertising and merchandising in the finished feed market, all of which enter into any determination of whether they felt the impact of the conspiracy.

The court's conclusion concerning this aspect of the plaintiff's case is buttressed by the Second Circuit's recent discussion of Hanover Shoe v. United Shoe Machinery Corp., 392 U.S. 481, 88 S.Ct. 2224, 20 L.Ed.2d 1231 (1968), in the course of its affirmance of the settlement reached before Judge Inzer B. Wyatt in many of the broad spectrum antibiotic actions. West Virginia v. Chas. Pfizer & Co., 440 F.2d 1079 (2d Cir. 1971), affirming 314 F.Supp. 710 (S.D.N.Y.1970). The Court of Appeals emphasized that "the most important thing to keep in mind" in considering the relevance of the *Hanover Shoe* case to multidistrict antitrust litigation, placing different levels of the marketing structure before a single judge, is "the result orientation with which the [Supreme] Court has approached the whole area of private treble-damage litigation." 440 F.2d at 1087 (Emphasis added). Dismissal of these claims will not free the defendants of liability but will place the responsibility for enforcement of antitrust policies in the hands of plaintiffs who suffered the impact of any conspiracy more directly and are, therefore, better able to prove their case and indicate the public interest in enforcement of the antitrust laws.

Thus, it should be noted that this court has established a class (The Doughboy Class) composed of all persons within the United States and Puerto Rico who:

(a) Purchased for manufacture or use broad spectrum antibiotics or broad spectrum antibiotic products for non-human use directly from the defendants; and/or

(b) Purchased for manufacture or use, but not for the purpose of resale, broad spectrum antibiotics or broad spectrum antibiotic products for non-human use from wholesalers, including distributors and subjobbers, in the same form as originally sold by the defendants. [Class Action Order No. 71–3 (January 21, 1971)]

Thus those who purchased antibiotic drugs for incorporation in "pre-mixes" or finished animal feeds are before this court seeking vindication of their damages under the antitrust laws. And the defendants have announced in open court that they would not attempt to assert a "pass-on defense" against the members of the Doughboy Class if their motion with respect to the claims of purchasers of finished animal feed was granted.

National classes have also been created on behalf of:

[A]ll those individuals, proprietorships, partnerships, corporations and other business firms and entities who * * * purchased broad spectrum antibiotics * * * for resale at wholesale for non-human use and whose chief functions are to sell the products in question to industrial, commercial, institutional and professional users or to offer wholesalers for non-human use or resale. [Class Action Order 71–1, January 14, 1971]

and on behalf of:

[D]octors of veterinary medicine, whether doing business as an individual or a partnership, corporation or association, who have purchased directly or indirectly, broad spectrum anti-

biotics * * *. for non-human use. * * * [Class Action Order No. 71–2, January 15, 1971]

In these circumstances, the court is convinced that the dismissal of these claims will not limit or frustrate the deterrent effect of section 4 but will rather enhance it by placing the claims in the hands of those best able to enforce them.

It is therefore ordered that defendants' motion for dismissal or partial summary judgment as to all claims arising from purchases of finished animal feed products not in the form originally sold by them be and the same is hereby granted.

This court has determined that no just reason for delay exists and therefore directs that a final judgment be entered pursuant to Rule 54(b), F.R.Civ.P. as to the above claims.