### In re Coordinated Pretrial Proceedings in WESTERN LIQUID ASPHALT CASES.

Master File No. 50173 RES Civ.

United States District Court,
N. D. California.

Nov. 30, 1972.

---

**1370**

Michael I. Spiegel, San Francisco, Cal., Liason counsel for plaintiffs.

Richard J. MacLaury, Pillsbury, Madison & Sutro, San Francisco, Cal., Liason counsel for defendants.

## OPINION AND ORDER *

RUSSELL E. SMITH, District Judge.

Plaintiffs, various states and municipalities, bring this action under the Sherman Act charging the defendant oil companies with conspiracies to fix the prices of liquid asphalt in violation of the Sherman Act (15 U.S.C. § 1). Plaintiffs make direct purchases of liquid asphalt for use in paving projects carried on by such plaintiffs with their own employees and, by letting public projects by means of competitive bidding, indirectly purchase asphalt in the form of the finished projects. Damages are sought on account of both the direct and indirect purchases.

Defendants, by motion for partial summary judgment, seek an adjudication that plaintiffs may not recover damages based upon the indirect purchases. In the case of an indirect sale the asphalt moves from the defendant supplier to a private contractor who mixes the asphalt with aggregate and applies the resultant asphaltic concrete to the surface to be paved. On any one project there may be one or more contractors (depending upon the number of subcontractors involved) between the initial supplier and the public authority involved. The plaintiff will be able to prove that in some jobs the contractor who was the successful bidder aggregated all of the fixed costs of items such as asphalt, pipe, guard rail, estimated the cost of labor and equipment use, and then added percentages for overhead and profit, totaled the whole, and thus arrived at the bid price. In short, plaintiffs can in some instances prove that the increased cost (assuming, of course, proof that a conspiracy did result in an increased cost) of asphalt was in fact borne by the plaintiffs.

Defendants take the position that except in the case of cost-plus contracts the initial supplier of the asphalt is the one damaged and that plaintiffs may not recover even if they can show that the increased prices were in fact passed on. Plaintiffs contend that the costs are always passed on and that once it is shown that the cost to a plaintiff's contractor was increased by a conspiracy the plaintiff may recover.

Were I confronted with the facts here (assuming a conspiracy-controlled market) and the law—"Any person who shall be injured . . . by reason of anything forbidden . . . shall recover. . . ." (15 U.S.C. § 15)—I would, if not otherwise controlled, conclude, first, that one who purchased for resale in the same or a different form and passed the excess price along is not injured, and, second, that the ultimate consumer of an article the price of which is increased by antitrust activity is injured.

---

* This Document relates to all Actions presently coordinated except Nos. 49808, 49638, 50307, and C–71–606.

But I am controlled. My first conclusion is not now permissible in view of Hanover Shoe, Inc. v. United Shoe Machinery Corp., 392 U.S. 481, 88 S.Ct. 2224, 20 L.Ed.2d 1231 (1968), and my second conclusion may not be.

In *Hanover* the courts had before them a corporation which supplied 75% to 95% of all of the shoe manufacturing machinery used in the United States. It did so on a leasing basis which permitted each manufacturer of shoes closely to approximate the costs of every other manufacturer using the same machinery. United States v. United Shoe Machinery Corp., 110 F.Supp. 295 (D.Mass.1953). In short, the shoe machinery market was a controlled market in which a uniformly high price was maintained. With this background, however, the district judge who tried *Hanover* (Hanover Shoe, Inc. v. United Shoe Machinery Corp., 185 F. Supp. 826 (M.D.Pa.1960)) refused an offer to prove that the overcharges were in fact passed on and that plaintiff did not actually suffer a money loss. In other words, the district court refused to equate a money loss with recoverable damages. This result is based upon the proposition that the law considers immediate and not remote consequences.

The Third Circuit affirmed on the basis of the opinion below. Hanover Shoe, Inc. v. United Shoe Machinery Corp., 281 F.2d 481 (3d Cir. 1960). The Supreme Court affirming did not by the affirmance alone decide that a remote purchaser could not recover because that fact issue was not before it. It is necessary, therefore, to determine whether the rule which the Supreme Court announced in reaching its result would forbid recovery by the remote purchaser. The matter is not free from doubt, but I conclude that it did.

In its opinion in *Hanover* the Supreme Court did not express any disapproval of the rule announced by the district court. On the contrary it quoted with apparent approval from that portion of the district court opinion expressing the remote consequences rule. Hanover Shoe, Inc. v. United Shoe Machinery Corp., *supra*, 392 U.S. at 488, n. 6, 88 S.Ct. 2224. This plus the fact of affirmance on the "pass-on" issue leads me to believe that the Court approved the rule announced by the district court.

Additionally the Supreme Court in *Hanover* relied upon the decision in Southern Pacific Co. v. Darnell-Taenzer Lumber Co., 245 U.S. 531, 38 S.Ct. 186, 62 L.Ed. 451 (1918). It is cited and partially quoted in two footnotes. Hanover Shoe, Inc. v. United Shoe Machinery Corp., *supra*, 392 U.S. at 488, n. 6, and 490, n. 8, 88 S.Ct. 2224. In *Darnell-Taenzer* Justice Holmes speaking for the Court said 245 U.S. at pp. 533–534, 38 S.Ct. at p. 186.

> The general tendency of the law, in regard to damages at least, is not to go beyond the first step. As it does not attribute remote consequences to a defendant so it holds him liable if proximately the plaintiff has suffered a loss. The plaintiffs suffered losses to the amount of the verdict when they paid. Their claim accrued at once in the theory of the law and it does not inquire into later events.

And again at p. 534, 38 S.Ct. at p. 186:

> If it be said that the whole transaction is one from a business point of view, it is enough to reply that the unity in this case is not sufficient to entitle the purchaser to recover, any more than the ultimate consumer who in turn paid an increased price. He has no privity with the carrier. State v. Central Vermont Ry. Co., 81 Vt. 459, 71 A. 193. See Nicola, Stone & Myers Co. v. Louisville & Nashville R. R. Co., 14 I.C.C. 199, 207–209. Baker Manufacturing Co. v. Chicago & North Western Ry. Co., 21 I.C.C. 605. The carrier ought not to be allowed to retain his illegal profit, and the only one who can take it from him is the one that alone was in relation with him, and from whom the carrier took the sum. New York, New Haven & Hartford R.R. Co. v. Ballou & Wright, [8 Cir.,] 242 F. 862. Behind the tech-

nical mode of statement is the consideration well emphasized by the Interstate Commerce Commission, of the endlessness and futility of the effort to follow every transaction to its ultimate result. 13 I.C.C. 680. Probably in the end the public pays the damages in most cases of compensated torts.

Clearly the stated rule of *Darnell-Taenzer* is that an immediate purchaser may recover and that a remote purchaser may not even though the former suffers no money loss and the latter does, and it is this rule which I believe the Supreme Court to have adopted and applied to antitrust actions in *Hanover*.

I next inquire whether for some reason the rule which I believe the Supreme Court to have adopted should not, in light of its opinion, apply here. On a balancing of the whole opinion in *Hanover* I find none.

If a defendant is required to pay damages to one who has suffered no money loss because of some policy of the law which forbids the court to inquire into after events, then as a matter of basic fairness that defendant should be permitted to assert that same policy when the remote purchaser sues him. In this case the plaintiffs Pioneer Construction Company, Inc. (Civil No. 49808), Cascade Construction Company, Inc. (Civil No. 49638), Page Paving Company (Civil No. 50307), and Copp Paving Company, Inc. (Civil No. C–71–608) seek damages by reason of purchases of liquid asphalt. If the law, as it does, requires that they be paid triple the amount of any overcharges and also requires that defendants pay triple damages on account of the identical liquid asphalt sold by these contractors to plaintiffs, then, of course, there is a six-fold recovery (or more, depending on the length of the chain between the initial purchaser and the consumer) for some of the overcharges. It may be that the Supreme Court intended this to be the result of *Hanover,* but I cannot infer it in the face of the several statements in the opinion that the remote purchaser may not recover.

In *Hanover* the Court did express policy considerations relating to the enforcement of the antitrust laws, and those policy considerations run the other way in this case. It may be that the policy announced in *Hanover* will generally achieve the result desired even though in a particular case the contrary is indicated. The Court did not, however, announce a rule to the effect that the persons most likely to be successful plaintiffs in antitrust litigation are the ones who can recover damage, and I cannot imply that rule from the result reached by the Court nor from the language used by it.

In *Hanover* the Court treated at some length the problems of proof created by a consideration of the remote purchaser. I am inclined to believe that these problems are discussed in justification of the damage rule announced in *Darnell-Taenzer* and followed in *Hanover.* The kind of proof problems suggested in *Hanover* are present here.[1]

---

1. Plaintiffs take a simplistic view of the damage problem, urging that: " . . . In order to measure damages incurred by plaintiffs when they purchased asphalt as a part of a road construction contract, it is only necessary to measure the difference between the average price level at the time of the award and the competitive base price line. The measurement of damages in the case of 'indirect' purchases is neither more difficult nor is it different than the measurement of damages in the case of 'direct' purchases." Plaintiffs' Memorandum in Opposition to Defendants' Motion for Partial Summary Judgment, pp. 86–87 (footnote omitted). In any present view of the law the kind of proof which plaintiffs suggest would at most make a prima facie case of damage. Certainly the court could not prevent the defendants from proving that in a particular case for one reason or another (perhaps mistake if nothing else) the low bidder did not consider his asphalt cost in preparing his bid. This means, of course, an examination of each contract. Whatever else, the effect of *Hanover* and *Darnell-Taenzer* is to reject the gen-

Other courts considering the "pass-on" problem post-*Hanover* have reached on one basis or another the conclusion which I reach. They are: Philadelphia Housing Authority v. American Radiator & Standard Sanitary Corp., 50 F.R. D. 13 (E.D.Pa.1970), aff'd sub nom. Mangano v. American Radiator & Standard Sanitary Corp., 438 F.2d 1187 (3d Cir. 1971)—plumbing fixtures; Philadelphia Housing Authority v. American Radiator & Standard Sanitary Corp., 323 F.Supp. 381 (E.D.Pa.1971)—plumbing fixtures; United Egg Producers v. Bauer International Corp., 312 F.Supp. 319 (S.D.N.Y.1970)—eggs; In re Antibiotic Antitrust Actions, 333 F.Supp. 310 (S.D.N.Y.1971)—broad spectrum antibiotic drugs; City and County of Denver v. American Oil Co., 53 F.R.D. 620 (D.Colo.1971)—asphalt; and Balmac, Inc. v. American Metal Products Corp., Civil No. C–71–950 SAW (N.D. Cal., filed Nov. 8, 1972)—gas vent pipe and fittings; City of Akron, Ohio, v. Laub Baking Co., 5 Trade Reg.Rep. (1972 Trade Cas.), para. 73,930 (N.D. Ohio, April 18, 1972)—bread.

To the contrary is Southern General Builders, Inc. v. Maule Industries, Inc., Civil No. 67–486–Civ. JE (S.D.Fla., filed Feb. 24, 1972)—concrete. *See* the analysis in State of West Virginia v. Chas. Pfizer & Co., 314 F.Supp. 710 (S.D.N. Y.1970), aff'd 440 F.2d 1079 (2d Cir. 1971), cert. denied Cotler Drugs, Inc. v. Chas. Pfizer & Co., 404 U.S. 871, 92 S. Ct. 81, 30 L.Ed.2d 115 (1971)—broad spectrum antibiotic drugs. *See also* Obron v. Union Camp Corp., 5 Trade Reg. Rep. (1972 Trade Cas.), para. 73,909 (E.D.Mich., March 28, 1972).

The defendants' motion for summary judgment is granted and plaintiffs are denied all relief based upon indirect purchases of liquid asphalt, except in those cases where the indirect purchases of liquid asphalt were made upon pre-existing cost-plus contracts, that is, contracts wherein the plaintiffs agreed to pay the contractors' costs, whatever they may be, plus a fixed percentage.

In my opinion this order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from this order may materially advance the termination of this litigation. Proceedings shall not be stayed unless by order of the court of appeals.

eralism that because the first in the purchasing chain suffers an overcharge some-

one late in the chain suffers compensable damage.