In re Coordinated Pretrial Proceedings in
**ANTIBIOTIC ANTITRUST
ACTIONS.
M 19–93A.**

United States District Court,
S. D. New York.

May 14, 1971.
As Amended Aug. 4, 1971.

ADMINISTRATIVE ORDER NO. 71–5

MEMORANDUM AND ORDER TRANSFERRING "HUMAN CONSUMPTION CASES" TO THE DISTRICT OF MINNESOTA UNDER 28 U.S.C. § 1404(a)

MILES W. LORD, District Judge (By Assignment).

On December 2, 1970, the Judicial Panel on Multidistrict Litigation assigned the so-called "non-settling" antibiotic drug cases to the undersigned judge for coordinated or consolidated pretrial proceedings under 28 U.S.C. § 1407. In re Antibiotic Drugs, 320 F.Supp. 586 (Jud. Pan.Mult.Lit.1970). With the exception of the action brought by the United States, all actions subject to this order involve treble damage claims allegedly resulting from purchases, either direct or indirect, of antibiotic drugs for *human consumption*.[1]

The "human consumption" category includes actions brought by states, cities, wholesale and retail drug stores, insurance companies, union welfare funds, the United States of America and two foreign nations. Many of them involve interlocking and overlapping claims. For example, each of the seven litigating states [2] seeks treble damages for reimbursements made by them for drugs purchased by their citizens under state welfare plans. However, the United States provides part of the funds for state welfare programs and it seeks prorata recovery for the same purchases.

---

1. The other "non-settling" cases include those brought by competitors of these defendants and treble damage actions arising from purchases of certain antibiotic drugs for non-human or agricultural use. The latter are generally referred to as the "farm cases."

2. The seven states which did not accept the "100-million dollar settlement" are California, Hawaii, Kansas, North Carolina, Oregon, Utah and Washington. See State of West Virginia v. Chas. Pfizer & Co., 314 F.Supp. 710 (S.D.N.Y.1970) aff'd 440 F.2d 1079 (2nd Cir. 1971).

Three large health insurance companies[3] seek treble damages allegedly resulting from their payments and inuring to them because of reimbursement for purchases of antibiotic drugs for their subscribers. These claims may be in conflict with both the consumer claims and the private hospital claims asserted by the litigating states. In addition, several union welfare funds also seek treble damages for reimbursed purchases made by their members or for drugs dispensed directly to their members.[4] It would appear that some union welfare funds may be insured by companies which may be included in the "insurance company class" and this would create a direct conflict between the two classes.[5] Finally, Thrifty Drug Stores, one of the largest drug chains on the west coast, seeks treble damages resulting from sales to consumers in several of the litigating states. This presents a direct conflict between Thrifty's claims and those of the affected states. There may also be a conflict between Thrifty's claims and those of some of the other "human consumption" plaintiffs. There is also a similar conflict and overlap on the international scene. The United States seeks damages resulting from its purchases of antibiotic drugs for distribution in its foreign aid program. The Republic of Vietnam apparently seeks treble damages resulting from some of the same purchases. As it stands now, many of these conflicting and overlapping cases will have to be tried separately in different districts and by different judges.

The defendants have indicated from the beginning of this litigation that they intend to urge that some of these plaintiffs are too remote or lack standing to assert their claims under the antitrust

laws and that others "passed-on" the illegal overcharge (if any) to those who purchased from them. The court soon recognized that these apparent conflicts presented one of the biggest problems in "managing" this litigation and in an unsuccessful attempt to distill the litigation down to more manageable proportions, it encouraged the defendants to file motions to dismiss several categories of plaintiffs on the ground that their claims were too remote or that they lacked standing to assert them. These motions were heard in March in San Francisco and after much deliberation, the court concluded that it could not, at this stage in the proceedings, hold *as a matter of law* that any of the "human consumption" plaintiffs were too remote or lacked standing to assert their claims.[6] *See,* State of Minnesota v. U. S. Steel Corp., 438 F.2d 1380 (8th Cir. 1971).

The court had intended, after paring down the litigation, to consolidate several groups of plaintiffs, such as the seven litigating states, for jury trials at least as to liability. As a part of this plan and with the approval of the Chief Justice of the United States, the Judicial Panel on Multidistrict Litigation and the Chief Judges of two circuits involved, this judge was assigned to the Northern District of California under 28 U.S.C. § 292(c) for the purpose of trying the cases originally commenced in that district.

However, since these overlaps and conflicts cannot, in this court's opinion, be resolved prior to trial, it has become increasingly clear that they can only be satisfactorily resolved by a coordinated or consolidated trial or trials in one district directed by the judge who is most familiar with this massive litigation.[7]

---

3. One seeks to represent a national class of all such health insurance companies.

4. Two of these are also brought as class actions.

5. The union welfare plaintiffs assert that there is no conflict between them and the states.

6. The claims of purchasers of medicated animal feeds were found to be too remote and were dismissed. See Misc. Order 71–11, 333 F.Supp. 310 (April 13, 1971).

7. The Gypsum Wallboard Antitrust Litigation (JPML Docket No. 14) involves

This led to the court's tenative conclusion that the transfer of all human consumption cases to a single district for trial purposes was a prerequisite to working out a realistic "trial plan" for them. Therefore, on April 5, 1971, this court ordered the parties to show cause why all human consumption cases (except the competitor cases) should not be transferred to the District of Minnesota pursuant to 28 U.S.C. § 1404(a). A hearing was held in New York City on May 5, 1971, and all parties had a full opportunity to present their views.

All defendants vigorously oppose the transfer of these cases to the District of Minnesota for trial and one of them, Chas. Pfizer & Co., seems to be categorically opposed to the transfer and consolidation of *any* of these cases for trial.

Apparently Pfizer would prefer to try these 31 separate actions in the eleven districts in which they were filed.[8] The plaintiffs generally favor transfer to a single district and approve of the selection of the District of Minnesota.

## I.

■ The threshold question is whether this judge, as a transferee judge, has the authority to transfer actions transferred to the court under section 1407 to another district under section 1404 (a).[9] In a comprehensive and typically well-written brief, the defendants point out quite correctly that Congress clearly limited the power of the Judicial Panel on Multidistrict Litigation to transfers for "coordinated or consolidated pretrial proceedings" and that it has no author-

---

a similar, though somewhat less complex situation. That litigation includes nearly 100 separate cases, many of which were filed in the transferee district, the Northern District of California. The parties all waived a jury trial and agreed to let the transferee judge, in his discretion, decide which cases and which issues were to be tried first. One category of cases —the dealer cases—was selected, consolidated and tried to the court on the issue of the alleged violation of Section 1 of the Sherman Act and its impact on the dealer plaintiffs. The court found that the defendants had combined and conspired to stabilize and maintain the price level of gypsum wallboard through a course of "independent conscious parallel action" and a partial judgment was entered in favor of the plaintiffs on this issue. Wall Products Co., et al. v. National Gypsum Co., et al., 326 F.Supp. 295, N.D.Cal., March 18, 1971. The court is now moving on to other issues and other types of cases. The court was able to develop such a plan since most of the cases were before it for all purposes and the parties consented to this type of approach to the trial of these cases. That is precisely the degree of control that this court hopes to achieve through transfer under 28 U.S.C. § 1404(a).

8. Pfizer suggested at oral argument that its real objective is to try each case in a district in the state in which the "transactions occurred." Apparently this would mean that the State of Oregon

Case would have to be transferred from the Southern District of New York where it was filed to the District of Oregon, the Los Angeles Case transferred from Northern District of California to the Central District of California, and the Utah Case transferred from the Northern District of California to the District of Utah. This would *increase* to fourteen the number of districts in which similar cases would have to be tried. This suggestion, coming as it does from one of the parties who originally moved the Panel to transfer these cases to a single district for pretrial, can only be characterized as incredible. Pfizer's preference for multiple trials does not seem to be shared by the other defendants. In a recent public statement reported in the April 23, 1971 issue of the *Wall Street Journal*, Squibb announced that settlement "was a preferable alternative to trial of separate cases over many years at great expense."

9. It seems clear that the undersigned, as a judge of the Southern District of New York, has the authority to transfer the cases originally filed in this district. Indeed, Judge Russell Smith, the transferee judge in the *Liquid Asphalt Antitrust Litigation*, has transferred actions filed in the transferee district to other districts under section 1404(a). While some may question the propriety of decentralizing litigation consolidated under section 1407, apparently no one has challenged that court's authority to make the transfers.

ity to transfer cases for trial. Since the Panel cannot transfer cases for trial neither, the defendants reason, can a transferee judge.

■■ Although the defendants' reasoning has a certain initial appeal, it breaks down on careful analysis. Section 1407 created the Judicial Panel on Multidistrict Litigation and defined and limited *its* jurisdiction. Neither the Act nor its legislative history in any way limit the normal authority of a district court. Indeed the legislative history specifies that the transferee court has the "authority to render summary judgment, to control and limit pretrial proceedings, and to impose sanctions for failure to make discovery or comply with pretrial orders." [10] The legislative history also makes it quite clear that section 1407 was designed to affect "only the pretrial stages in multidistrict litigation [and not] the place of trial." Nor does transfer under section 1407 "exclude the possibility of transfer under other Federal statutes." [11] There is absolutely no reason to believe that the district judge to whom a case has been assigned under section 1407 has any less authority or power *as to matters preceding the actual trial of a case* than would a judge before whom the case was originally filed. It is equally clear that a motion to transfer a case *for trial* is a *pretrial motion* which generally should be determined prior to the completion of discovery. McDonnell Douglas Corp. v. Polin, 429 F.2d 30 (3d Cir. 1970). For these reasons, this Court has concluded, as have other transferee courts,[12] that a transferee district court has the *authority* to transfer under section 1404

(a), cases transferred to it under section 1407. Any other holding would create an anomalous situation for the Panel has held that from the time of entry of its order of transfer until the time of entry of an order of remand, the transferor court is without jurisdiction and can issue no further orders. In re Plumbing Fixture Cases, 298 F.Supp. 484, 486 (Jud.Pan.Mult.Lit. 1968).[13] Thus, if the *transferee judge* cannot make a section 1404(a), or an even more critical section 1406(a) transfer, no court can and both sections 1404(a) and 1406(a) will have been temporarily suspended by section 1407. That surely cannot have been the intent of Congress.

## II.

■ Having decided that it has the authority to order a transfer under section 1404(a), the court must turn to the question of whether any or all of these cases should be transferred to a single district for trial at the completion of pretrial proceedings. The prerequisite for a section 1404(a) transfer is that it can only be to a district where the transferred action "might have been brought." No one suggests that any of the cases being considered for transfer could not have been brought in the District of Minnesota. The court notes that all defendants are named in the one "human consumption" case brought in the District of Minnesota [14] as well as in several "farm cases" originally filed in Minnesota. The court concludes therefore that all of the actions subject to this show cause order could have been brought in Minnesota.

■ Before turning to the three factors which are to be taken into account

---

10. House Report No. 1130, 90th Congress, 2nd Session, U.S.Cong. & Admin.News, p. 1900 (1968).

11. Ibid.

12. State of Illinois v. Harper & Row, No. 67 C 1899 (N.D.Ill. March 23, 1971) and Jack Winter, Inc. v. Koratron Co., Inc., 326 F.Supp. 121 (N.D.Cal.1971).

13. If, contrary to the views of the Panel, an appellate court were to hold that the

*transferor court* retains the power to make section 1404(a) transfers, the undersigned would, as a judge of both the Northern District of California and the Southern District of New York, transfer the eighteen actions filed in those districts to the District of Minnesota under section 1404(a).

14. Mutual of Omaha v. Chas. Pfizer, etc., et al., S.D.N.Y.Civil Action No. 71 Civ. 570 (D.Minn., No. 4–71–Civil–6).

in deciding whether to make a section 1404(a) transfer—the convenience of parties, the convenience of witnesses, and the interests of justice—one must recognize that this is not a typical section 1404(a) situation. The court is not considering the transfer of *one* case from *one* district to another but rather the transfer and consolidation of 32 cases filed in twelve districts into one district for trial.[15] Thus, instead of looking to the individual convenience of *each* party and *each* witness, the court must look to the overall convenience of all parties and witnesses. *Cf.*, In re Library Editions of Children's Books, 297 F.Supp. 385 (Jud. Pan.Mult.Lit.1968). The plaintiffs, recognize this fact and favor transfer of all cases for trial, at least as to liability.[16]

In Grey v. Continental Marketing Assoc., Inc., 315 F.Supp. 826, 831 (N.D. Ga.1970), the court outlined all of the factors to be considered in deciding whether a case should be transferred under section 1404(a) and indicated what weight should be given to each factor. Factors entitled to *great weight* are:

1. Plaintiff's choice of forum.

2. A showing that the inconvenienced witnesses are key witnesses whose testimony cannot be effectively presented by deposition.

3. Whether other actions involving the same subject matter are pending in the transferee district.

These factors present no obstacle to the transfer of all cases to a single district. First, the plaintiffs have waived their original choice of forum and have all agreed to have their cases tried in Minnesota. There has been no showing that any witness will be inconvenienced by transfer or that any testimony can not be effectively presented by deposition.[17] One of the most compelling reasons for transferring all related cases to a single district is to avoid the necessity of requiring the same witnesses to testify at many different trials in several different states. Finally, there is at least one related case now pending in the transferee district and, after transfer, all related actions will be centralized in one district.

Relevant factors entitled to *some weight* are:

1. The parties financial ability to undertake trial in the transferee forum.

2. Relative congestion of the dockets in the respective districts.

3. Where the actions out of which the controversy arose occurred.

No one has suggested that any of the parties, plaintiffs or defendants, are financially unable to try or defend these cases in Minnesota. Although the plaintiffs will incur additional expenses for travel and lodging, they apparently feel that these additional costs will be more than offset by the savings in time and

15. The court is *not* referring to a Rule 42(a) consolidation for trial but rather the concentration of all cases before a single judge in one district.

16. The one plaintiff opposing transfer of its case to Minnesota, Thrifty Drug Stores, would consent to such a transfer if its case was being transferred for a joint trial *limited to liability.* What Thrifty objects to is the trial, as to damages, of its case with the state cases. While impressed by some of the arguments advanced in Thrifty's brief, the court does not believe that they are particularly relevant to the question *now* before the court: whether these cases should be transferred to a single district under section 1404(a). Section 1404(a), like section 1407, does not provide for the transfer of a portion of the case; the case must be transferred in its entirety. This does not mean, as Thrifty apparently fears, that all transferred cases will automatically be consolidated for single trial as to liability and damages. The court has attempted to make clear that it has not formed an inflexible plan for the trial of these cases and would, with counsel, seek ways to expedite trial and minimize the inconvenience of the witnesses. The court believes that Thrifty's its rights. A careful reading of Thrifty's brief discloses no reason why transfer under section 1404(a) to the District of Minnesota would not serve its convenience and the convenience of its witnesses. The court believes that Thrifty's other objections are, at this point, premature.

17. The apparent problem of witnesses residing beyond the 100-mile subpoena limit will be solved by requiring that *all* witnesses must be deposed prior to trial.

effort which will result from a consolidated or coordinated trial or trials. On the other hand, it would seem that the cost of defending these cases will be substantially reduced by transfer to Minnesota for, in the absence of such a transfer, the defendants would have to try at least one "human consumption" case in Minnesota and the remaining 31 cases in eleven different jurisdictions. The court can take judicial notice of the fact that each of the defendants has retained extremely able, competent and experienced counsel in Minnesota and that they have been extremely active in the preparation of these cases. It may be assumed that many of these counsel will participate in the trial of these cases *wherever they are* tried.

Turning to the relative congestion of the trial dockets in the twelve districts in which the cases were filed, one finds that Minnesota has the shortest median interval from filing through trial.[18] Actually, the comparative statistics may not tell the whole story for the undersigned is prepared to begin trial of these cases, if the defendants are ready, on July 1, 1971. If these cases were to be remanded to the courts of origin, it is uncertain when the trial of any of them could begin.

The third factor entitled to "some weight" refers to the desirability of having the trial in the district in which the controversy arose. Pfizer seems to urge that this factor alone should determine the place of trial. The court agrees that this is a factor to be considered, albeit not one entitled to great weight, but concluded that it was outweighed by the other factors which favor transfer of all cases to a single district.

The remaining factors are entitled to *little weight*. They include:

1. Alleged hardship unsupported by proof or affidavits.

2. Domicile of corporate defendants.

3. Convenience of counsel.

These are the three factors stressed by defendants in their opposition to the proposed transfer. None are sufficient to overcome the benefits which will flow from having all cases before one judge for all purposes. Thus, it is seen that all of the factors entitled to "great weight" and two of the three factors entitled to "some weight" support transfer of these cases to a single district for trial.

It is frankly somewhat surprising that these defendants oppose transfer of these cases to a single district for trial since they originally urged the Judicial Panel on Multidistrict Litigation to transfer these same cases to a single district for pretrial proceedings under section 1407. It is difficult for this court to understand how these defendants could have then contended that "the consolidation of all of the cases before a single judge in a single judicial district for coordinated or consolidated pretrial proceedings pursuant to 28 U.S.C. § 1407 would promote the just and efficient conduct of the cases and save substantial judicial time"[19] and now oppose the consolidation of the *same cases* before the *same judge* for trial.

The defendants have consistently and energetically contended that these cases and the classes of plaintiffs involved are inherently unmanageable. The court has already held that the class actions

18. TIME INTERVAL BETWEEN FILING AND TERMINATION BY TRIAL FOR FISCAL YEAR 1969

| District | Interval in Months |
| --- | --- |
| Minnesota | 11 |
| W. D. Washington | 13 |
| S. D. Indiana | 14 |
| Hawaii | 15 |
| N. D. Illinois | 18 |
| Maryland | 18 |
| W. D. Missouri | 19 |
| E. D. North Carolina | 19 |
| District of Columbia | 24 |
| N. D. California | 28 |
| S. D. New York | 39 |

SOURCE: Annual Report of the Director of the Administrative Office of the United States Courts, 1969—Table C-5

19. Defendant's Motion to Transfer, p. 2 (August 5, 1968).

may be managed [20] and it now holds that these complex, overlapping and sometimes conflicting cases can be *effectively* tried only if they are transferred to one court and to one judge. Attempting to try these cases in any other manner would be like trying to assemble a jigsaw puzzle with some of the pieces missing.

■ Transfer must also serve the interests of justice. It is important to all of these parties, plaintiffs as well as defendants, that this litigation be resolved as quickly as possible. The defendants have been involved in related litigation for almost fifteen years and one would think that they would be anxious to see it come to an end. The plaintiffs, if successful, are entitled to recover their damages as soon as possible. It is this court's firm belief that the transfer of these cases to a single district will materially decrease the amount of time it will take to bring this litigation to a close. It is axiomatic that "justice delayed is justice denied." If, as this court believes, the transfer of these cases to a single district will speed their disposition without prejudicing the parties' rights, will reduce the number of appearances of witnesses and will save the parties (both plaintiffs and defendants) the time and expense which would be involved in multiple trials, there can be no doubt that the interests of justice will be served by such a transfer.

### III.

■ Finally, the court must decide whether Minnesota is an appropriate forum for trial of these multidistrict cases. None of the plaintiffs object to trial of their cases, at least as to liability, in Minnesota [21] although the court recognizes that a good argument could have been made for transfer to the Northern District of California. The defendants, with the exception of Pfizer, which insists that these cases should be separately tried in each of thirteen districts, prefer trial in the Southern District of New York. It is true that the Southern District of New York was selected by the Judicial Panel on Multidistrict Litigation as the most appropriate district for coordinated or consolidated *pretrial proceedings*. The Panel gave three primary reasons for leaving these cases in New York:

> * * * First there is an enormous quantity of relevant documents located in New York City. The files in these cases alone fill a special file room in the clerk's office in the Southern District of New York. More important, the defendants have established a document depository in New York City in which more than 24,000 documents have been deposited. Finally, of course, the files and records in the criminal case are also located in New York City. * * * In re Antibiotic Drugs, 320 F.Supp. 586, 589 (1970)

None of these factors have any real significance when considering a forum *for trial* since the parties will, by then, have selected the documents which they intend to use at trial and will have dismantled their document depositories.[22]

It is easy to understand why the defendants prefer the Southern District of New York. They are all represented by counsel from New York, Philadelphia or Washington, D. C. but, as noted previously, the convenience of counsel is entitled to "little weight." Furthermore, defendants' local counsel in Minnesota have played an increasingly important role in this litigation and at least one local firm will be trial counsel in the "farm cases." It is, of course, impossible in multidistrict litigation of this type to find a court which would be totally convenient to all parties, all witnesses and all counsel. It is important that the witnesses and all counsel not be unduly inconvenienced, but there has been no showing that any other district would be anymore convenient than Minnesota. The Chairman of the Plaintiffs' National Steering Committee is from St.

---

**20.** Consumer Class Actions Opinion No. 2, 333 F.Supp. 278 (May 5, 1971).

**21.** See Footnote 16, *supra*.

**22.** It should be noted that the plaintiffs' document depository has always been located in Minnesota.

Paul, Minnesota and this litigation, from plaintiffs' point of view, has been directed from Minnesota for some time.[23] Although only one of the "human consumption" cases, a purported class action on behalf of all health insurance companies in the United States brought by one of the largest insurers, Mutual of Omaha, was filed in this district, it seeks very substantial damages. Whether the insurers can recover is another matter, but the presence of that case in Minnesota means that all transferred plaintiffs will have an active, aggressive and resourceful partner there.

Although this order is limited to the "human consumption" cases, it should not be overlooked that a great many of the farm cases were originally filed in Minnesota and that all "farm plaintiffs" previously agreed to transfer the remaining cases in Minnesota for trial. While it is not now known to what extent, if any, the issues in these two categories of cases can be consolidated or coordinated for trial, it is obvious that the transfer of both groups to the same district has great potential for saving the time of parties and witnesses. The resolution of related issues by the same trial court and, if necessary, the same court of appeals, would preclude inconsistent rulings and verdicts and would eliminate a source of confusion and delay in the final termination of this litigation.

The defendants have raised an objection to trying a state case before a jury composed of residents of that state. Any such "home court" advantage would be eliminated by the transfer to a district like Minnesota where the "state case" has been settled.

Finally, it must be recognized and admitted that the District of Minnesota is the *only* convenient forum for the undersigned judge. The whole purpose of transfer is to centralize all cases in one district so that they can be tried by one judge. There can be little doubt that the judge best suited to try these or any other complex cases is the judge who supervised discovery and other pretrial proceedings.[24] Whether the trial of these cases is going to take six weeks or six months or even longer, this judge will only be available to try them in his home district. Minnesota is not a large district with many judges and the absence of one judge for several months would undoubtedly have a detrimental effect on its busy docket.[25]

IV.

■ If transfer is to be made to Minnesota, the defendants have asked the court to certify the question under 28 U.S.C. § 1292(b). The court recognizes that there is "substantial ground for difference of opinion" as to whether it has the *power*, to transfer these cases but it cannot in good faith, grant defendants' request. This court does not believe that this issue is "controlling" in that it will affect the ultimate outcome of this litigation. Nor does it believe that immediate appeal would "materially advance the ultimate termination of the litigation." The parties may, of course, during the period between now and June 15, 1971, seek appellate review of this order by writ of mandamus. See Garner

23. "The Plaintiffs' National Steering Committee for over two years has centralized files for the benefit of all plaintiffs in the District of Minnesota. The increased accumulation of documents, transcripts, microfilm and other resources are in that District. Documents produced by defendants have been produced in the District of Minnesota. For example when the 16,000 so called "Spanish Documents" were produced (after two years), they were produced in Minnesota and are being correlated and referenced there." Johnson affidavit, p. 2 (May 1971).

24. When the court suggested to the parties that other judges be employed to supervise depositions, the suggestion was quickly and unanimously rejected. The parties seemed to then agree that the cases should remain in the hands of a one judge.

25. The court has informally indicated to counsel that it would probably limit trial of these cases to Monday through Thursday. Using Fridays and Saturdays, the court could keep its regular docket from falling too far behind.

v. Wolfinbarger, 433 F.2d 117 (5th Cir. 1970).

It is therefore ordered that all actions listed on the attached Schedule A shall be transferred to the District of Minnesota under 28 U.S.C. § 1404(a) at the completion of pretrial proceedings. The Court anticipates that pretrial proceedings will be completed on or about June 15, 1971. The court will then advise the Judicial Panel on Multidistrict Litigation that pretrial proceedings have been completed and will request that it remand all transferred cases to the District of Minnesota pursuant to Rule 15(d) of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation. The court will at that time direct the Clerk of this Court to forward the files and records in these cases to the Clerk of the District of Minnesota. The time between the filing of this order and the actual transmittal of the files to Minnesota can be used by the parties and court personnel to select and prepare the necessary papers for transmittal.

So ordered.

SCHEDULE A

| | |
|---|---|
| State of Oregon v. Chas. Pfizer & Co., Inc., et al. | 68 Civ. 2370 |
| County of Los Angeles v. Chas. Pfizer & Co., Inc., et al. (N.D. Cal., No. 49670) | 68 Civ. 4341 |
| Kansas City, Missouri v. Chas. Pfizer & Co., Inc., et al. (W.D. Mo., No. 17465–2) | 68 Civ. 2861 |
| State of Washington v. Chas. Pfizer & Co., Inc., et al. (W.D. Wash., No. 8184) | 69 Civ. 3194 |
| State of North Carolina v. Chas. Pfizer & Co., Inc., et al. (E.D. N.C., No. 2287) | 69 Civ. 839 |
| State of Hawaii v. Chas. Pfizer & Co., Inc., et al. (Hawaii, No. 2935) | 69 Civ. 776 |
| State of Utah v. Chas. Pfizer & Co., Inc., et al. (N.D. Cal., No. 50536) | 69 Civ. 798 |
| State of California v. Chas. Pfizer & Co., Inc., et al. (N.D. Cal., No. 49044) | 68 Civ. 4343 |
| State of Kansas v. Chas. Pfizer & Co., Inc., et al. (Kansas, No. T–4404) | 68 Civ. 4264 |
| City and County of San Francisco v. Chas. Pfizer & Co., Inc., et al. (N.D. Cal., No. 48909) | 68 Civ. 4274 |
| Republic of Viet Nam v. Chas. Pfizer & Co., Inc., et al. (N.D. Ill., No. 70 C 279) | 70 Civ. 877 |
| United States v. Chas. Pfizer & Co., Inc., et al. (D.C., No. 1966–69) | 70 Civ. 421 |
| State of Kuwait v. Chas. Pfizer & Co., Inc., et al. | 69 Civ. 4091 |
| Retail Clerks Local 770, et al. v. Chas. Pfizer & Co., Inc., et al. (N.D. Cal., No. C–70–1681) | 70 Civ. 3738 |
| Hoffa Medical Center v. American Cyanamid, et al. | 69 Civ. 5632 |
| Union Health Center of New York v. Chas. Pfizer & Co., Inc., et al. | 69 Civ. 2838 |
| Edward Swayduck v. Chas. Pfizer & Co., Inc., et al. | 69 Civ. 5154 |
| Teamsters Security Fund of North Carolina v. Chas. Pfizer & Co., Inc., et al. (N.D. Cal., No. 51010) | 69 Civ. 1629 |
| Valley Clerks Trust Fund v. Chas. Pfizer & Co., Inc., et al. (N.D. Cal., No. C–70–1294–LHB) | 70 Civ. 3157 |
| San Francisco Culinary, Bartenders & Service Employees Welfare Fund v. Chas. Pfizer & Co., Inc., et al. (N.D. Cal., No. C–70–1295–ACW) | 70 Civ. 3158 |
| Bakers Health & Welfare Fund v. Chas. Pfizer & Co., Inc., et al. (N.D. Cal., No. C–70–1680–ACW) | 70 Civ. 3737 |
| Building Service Union Health & Welfare Trust Fund v. Chas. Pfizer & Co., Inc., et al. (N.D. Cal., No. 51523) | 69 Civ. 3220 |
| Associated Life Insurance Co. v. Chas. Pfizer & Co., Inc., et al. (N.D. Ill., No. 70 C 368) | 70 Civ. 1094 |
| California Physicians' Service v. Chas. Pfizer & Co., Inc., et al. | 69 Civ. 4746 |
| Aetna Life Insurance v. Chas. Pfizer & Co., Inc., et al. | 69 Civ. 3294 |
| Lester Cronley v. Chas. Pfizer & Co., Inc., et al. (S.D. Ind., No. IP 69–C–366) | 69 Civ. 4025 |
| Ralph Pfau v. Chas. Pfizer & Co., Inc., et al. (S.D. Ind., No. IP 69–C–367) | 69 Civ. 4089 |
| Bernard & Mark Lachman, et al. v. Chas. Pfizer & Co., Inc., et al. (Md., No. 20971) | 69 Civ. 3522 |
| Group Health Cooperative of Puget Sound v. Chas. Pfizer & Co., Inc., et al. (W.D. Wash., No. 8222) | 69 Civ. 3195 |
| Thrifty Drug Stores Co. v. Chas. Pfizer & Co., Inc., et al. (N.D. Cal., No. 70–502–AAH) | 70 Civ. 1604 |
| Marvin Barkal v. Chas. Pfizer & Co., Inc., et al. (N.D. Ill., No. 69 C 647) | 69 Civ. 1867 |

## ADMINISTRATIVE ORDER NO. 71–10

It appearing that trial in some of these cases has been set for September 16, 1971, in Minnesota, and that there is no reason for further delay in the transfer of these cases.

It is therefore ordered that Administrative Order No. 71–5, 333 F.Supp. 299 be, and hereby is, amended to read that the transfer of the cases affected by that order shall be effective immediately.