**In re Coordinated Pretrial Proceedings In WESTERN LIQUID ASPHALT CASES.**

**STATE OF ALASKA et al., Plaintiffs-Appellants,**

v.

**STANDARD OIL COMPANY OF CALIFORNIA et al., Defendants-Appellees.**

**No. 73–1086.**

United States Court of Appeals, Ninth Circuit.

Oct. 3, 1973.

As Amended Nov. 30, 1973.

Certiorari Denied Feb. 19, 1974. See 94 S.Ct. 1419.

See, also, Jud.Pan.Mult.Lit., 309 F. Supp. 157.

Michael I. Spiegel, Deputy Atty. Gen. (argued), San Francisco, Cal., Edward A. Nugent, Sp. Asst. Atty. Gen., (argued), Salem, Ore., John Havelock, Atty. Gen., Donald Beighle, Asst. Atty. Gen., Juneau, Alaska, Gary K. Nelson, Atty. Gen., Barry Leverant, Alan K. Polley, Asst. City Attys., Phoenix, Ariz., Herbert E. Williams, Donald C. Deagle, Asst. City Attys., Tucson, Ariz., J. La-Mar Shelley, City Atty., Mesa, Ariz., Leonard C. Langford, County Atty., Kingman, Ariz., Milton H. Mares, Deputy City Atty., San Francisco, Cal., Ronald L. Johnson, Chief Deputy City Atty., Robert J. Logan, Deputy City Atty., San Diego, Cal., Frank Wagner, Deputy City Atty., Los Angeles, Cal., Michael R. Downey, Deputy City Atty., M. Van Smith, Santa Clara, Cal., Frederic P. Furth, John H. Boone, Geoffrey P. Knudsen, Peter C. Haley, Offices of F. P.

Furth, San Francisco, Cal., Guido Saveri, Steven Swig, Offices of Joseph L. Alioto, San Francisco, Cal., William H. Ferguson, C. David Shepard, Ferguson & Burdell, Seattle, Wash., John Aslin, Larry Nord, Seattle, Wash., James Caplinger, Caplinger & Munn, Seattle, Wash., Ray Siderius, Siderius, Lonergan & Crowley, Seattle, Wash., James Gillespie, Spokane, Wash., Patrick J. Donnelly, Seattle, Wash., James R. Holman, Holman, Lewis & MacArthur, Tempe, Ariz., Robert L. Bluemle, Phoenix, Ariz., Henry A. Carey, Jr., Carey & Hanlon, Portland, Ore., for plaintiffs-appellants.

Richard J. MacLaury (argued), Francis R. Kirkham, James B. Atkin, Pillsbury, Madison & Sutro, San Francisco, Cal., Morris M. Doyle, Graham B. Moody, Jr., Frederic A. Sawyer, Douglas B. Schwab, McCutchen, Doyle, Brown & Enersen, San Francisco, Cal., Moses Lasky, Richard S. Haas, George A. Cumming, Jr., Brobeck, Phleger & Harrison, San Francisco, Cal., Robert D. Raven, F. Bruce Dodge, Morrison, Foerster, Holloway, Clinton & Clark, San Francisco, Cal., Gordon Johnson, Frank D. MacDowell, Thelan, Marrin, Johnson & Bridges, San Francisco, Cal., M. Laurence Popofsky, Heller, Ehrman, White & McAuliffe, San Francisco, Cal., Donald C. Smaltz, Ralph B. Perry, III, Grossman, Smaltz, Graven & Perry, Los Angeles, Cal., Max L. Gillam, Philip F. Belleville, Robert E. Currie, Latham & Watkins, Los Angeles, Cal., Richard W. Curtis, Gulf Oil Corp., Los Angeles, Cal., Jack Corinblit, Corinblit & Shapero, Los Angeles, Cal., Paul G. Bower, Gigson, Dunn & Crutcher, Los Angeles, Cal., William Simon, John Kingdon, Howrey, Simon, Baker & Murchison, Washington, D. C., Patrick J. Donnelly, Lindell & Carr, Seattle, Wash., Bruce R. Merrill, Houston, Tex., Morris Harrell, Rain, Harrell, Emery, Young & Doke, Dallas,

Tex., Verne H. Maxwell, Thompson, Knight, Simmons & Bullion, Dallas, Tex., for defendants-appellees.

William J. Scott, Atty. Gen., John P. Meyer, Sp. Asst. Atty. Gen., Springfield, Ill., Theodore L. Sendak, Atty. Gen., Indianapolis, Ind., Vern Miller, Atty. Gen., Jack B. Steineger, Sp. Asst. Atty. Gen., Topeka, Kan., Frank J. Kelley, Atty. Gen., Christopher Nern, Asst. Atty. Gen., Lansing, Mich., Louis J. Lefkowitz, Atty. Gen., Samuel A. Hirshowitz, First Asst. Atty. Gen., John M. Desiderio, Asst. Atty. Gen., Chief, Antimonopolies Bureau, Albany, N. Y., Israel Packel, Atty. Gen., Gerry J. Elman, Deputy Atty. Gen., Harrisburg, Pa., Robert W. Warren, Atty. Gen., Bruce Craig, Asst. Atty. Gen., Madison, Wis., Chauncey H. Browning, Jr., Atty. Gen., Gene Hal Williams, Deputy Atty. Gen., Charleston, W. Va., George T. H. Pai, Atty. Gen., Honolulu, Hawaii, Robert List, Atty. Gen., Carson City, Nev., W. Anthony Park, Atty. Gen., Boise, Idaho, Lee A. Freeman, Jr., Sp. Asst. Atty. Gen., Chicago, Ill., Josef D. Cooper, Francis Scarpulla, San Francisco, Cal., Sp. Counsel for Hawaii, Idaho, and Nevada, for amicus curiae.

Before CARTER and GOODWIN, Circuit Judges, and FERGUSON,* District Judge.

OPINION

JAMES M. CARTER, Circuit Judge:

This interlocutory appeal was allowed under 28 U.S.C. § 1292(b), from an order of the district court granting partial summary judgment to defendants-appellees. In re Coordinated Pretrial Proceedings in Western Liquid Asphalt Cases (N.D.Cal.1972), 350 F.Supp. 1369.

---

* Hon. Warren J. Ferguson, United States District Judge, Central District of California, sitting by designation.

Appellants [1] brought these actions for damages and injunctive relief [2] under Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1 and 2, and Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26. Appellants allege that appellees, suppliers of asphalt, illegally raised and stabilized the price of liquid asphalt, which is used in the construction of public roads, through a conspiracy to fix prices, to submit rigged and collusive bids, to allocate and stabilize the relevant market, and otherwise to eliminate competition. For purposes of summary judgment, these allegations must be assumed to be true.

The district court held [3] in substance that appellants, who indirectly purchased an assumedly price-fixed product through contractors, and who are assumed to be able to show that at least part of the illegal overcharge was passed on to them, are precluded as a matter of law from recovering such damages as they ultimately might be able to prove. The court relied for its decision upon

Hanover Shoe, Inc. v. United Shoe Machinery Corp., 392 U.S. 481, 88 S.Ct. 2224, 20 L.Ed.2d 1231 (1968). We reverse.

### Facts

The facts are not seriously in dispute. Some of appellants' purchases of liquid asphalt were made directly from appellees. In those instances, the liquid asphalt alone was obtained for application by appellants in road maintenance work. Such direct purchases are not involved in this appeal.

In other instances, the asphalt was only a part of the product supplied to appellants by its contractors after combination with other ingredients, in a road construction project. These purchases were made in one of two ways. Some were made through pre-existing cost-plus contracts, in which appellants agreed to pay the cost of materials as charged to the contractors by suppliers, plus a charge for the contractors' services. In others, however, the contractors ob-

---

1. Numerous states, cities, counties, and special districts, and a few contractors, brought suit. The actions were consolidated in the Northern District of California by the Multidistrict Litigation Panel, pursuant to 28 U.S.C. § 1407. In re Western Liquid Asphalt (Jud.Pan.Mult.Lit.1970), 309 F.Supp. 157 (1969), 303 F.Supp. 1053.

   Appellants herein are the states of Alaska, Arizona, California, Oregon, and Washington, who purchased both directly and indirectly (through contractors) from appellees, and who appealed under 28 U.S.C. § 1292. Other plaintiffs, who purchased only indirectly, appealed under § 1291. The order appealed from lacked the requisite certificate under Fed.R.Civ.P. 54(b). For that reason, a motions panel of this court dismissed the appeals of these latter plaintiffs, without prejudice to refiling if the required certificate were obtained from the district court. None have refiled.

2. The district court's opinion below discussed only 15 U.S.C. §§ 1, and 15, which together relate solely to damages, and the motion for partial summary judgment relates to damages. 350 F.Supp. at 1370. However, the court's holding, see note 3 infra, denies appellants "all relief" based upon indirect purchases," inter alia. 350 F.Supp. at 1373 (emphasis added). We construe this to

mean damages only, not injunctive relief, and our opinion is concerned only with the damages issues. However, it is appropriate to note that the requirements for standing regarding injunctive relief under 15 U.S.C. § 26 are different and less stringent in some respects than those for damages under § 15. In re Multidistrict Vehicle Air Pollution M.D.L. No. 31 (9 Cir., 1973), 481 F.2d 122 at 130.

3. The district court's precise ruling reads: "The defendants' motion for summary judgment is granted and plaintiffs are denied all relief based upon indirect purchases of liquid asphalt, except in those cases where the indirect purchases of liquid asphalt were made upon pre-existing cost-plus contracts, that is, contracts wherein the plaintiffs agreed to pay the contractors' costs, whatever they may be, plus a fixed percentage.

   "In my opinion this order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from this order may materially advance the termination of this litigation. Proceedings shall not be stayed unless by order of the court of appeals." 350 F.Supp. at 1373.

tained bids from suppliers, then computed their own, overall bid. The appellants then awarded particular projects to the lowest bidder among responsible contractors. The claims under direct and cost-plus purchases survived the motion granted below, and only the remaining indirect purchases are involved in this appeal.

Affidavits submitted by appellants reflect that the usual bidding process, not disputed in substance by appellees, involves certain common steps. The contractor totals suppliers' sub-bids, adds an amount for his services, including labor and other overhead, and an amount for profit. The total is then re-divided and apportioned to each supply item, but the dollar amount so allocated to each item varies depending on factors such as cost, and method of payment. The overall bid, including allocations to each supply item, is then submitted in competition for the particular project.[4] A contractor is not interested in the level of the price charged by suppliers, so long as he receives at least as low a rate as his competitors.

Occasionally a contractor will use a paving subcontractor, in which case the subcontractor prepares his sub-bid in the same general manner as do contractors. In any case, sub-bids from suppliers and subcontractors are regarded as firm.

Appellees also monitor schedules of future road projects, and from time to time offer quotations to contractors, by which they offer to supply materials such as asphalt at a specific price for a particular project only. Also, appellees manufacture asphalt to comply with specifications published by the governmental bodies, and so certify to the contractors.

In addition, documents obtained from appellees during discovery tend to indicate that they control a high percentage of their direct customers of asphalt, either through acquisition of stock, or indirectly through various financial arrangements, including credit.

Appellants contend that the cost of asphalt to the contractor, including allegedly illegal overcharges, is always passed on to them as the ultimate purchasers. Appellees take the position that it is only the initial purchaser—the contractor—who is damaged. Any increase paid by the ultimate purchasers, they say, is too remote from the alleged overcharges to be susceptible of proof.

---

4. In further explanation of this somewhat esoteric process, we quote from one of the affidavits on the subject submitted by appellants, that of William Corn, Manager of Estimating, Highway and Marine Division, of a construction contractor, and a registered engineer.

"1. Each public road construction contract is composed of a number of separate items of work. Each item of work typically is composed of certain material and labor costs. Certain items may also involve equipment costs.

"2. The company uses a work sheet to compute the lowest cost to complete each item of work set forth in the contract. The company, in making its computation, ascertains in regard to each item, the actual cost, to the extent applicable, of the material, labor and equipment involved. The cost of those items of work to be covered by a subcontract, such as paving, is ascertained by obtaining bids from one or more subcontractors.

" . . . .

"5. The total bid price is arrived at by adding the costs computed for each item of work and by adding thereto additional amounts for overhead, contingencies and profit. These amounts vary from job to job.

"6. Each contract bid form contains a number of contract 'pay items'. Typical contract 'pay items' are '_____ tons, liquid asphalt, MC250', and '_____ tons, aggregate'. Once the total bid price is computed, it is divided and spread among the various contract pay items. The dollar amount allocated to each contract pay item is based on many considerations, including cost and the schedule or manner of payment. As a result, the dollar amount stated for each contract pay item, including asphalt, may vary from its actual cost. . . . "

## I.

### *Standing and Liability*

The district court said, 350 F.Supp. at 1370–1371, that it would rule for appellants, were its decision not controlled by *Hanover Shoe, supra,* 392 U.S. 481, 88 S.Ct. 2224. That case held that a supplier being sued by an immediate purchaser for alleged overcharges (in violation of antitrust laws) cannot raise a defense that the immediate purchaser may have recovered all or part of the overcharges by passing them on to his customers.

In *Hanover Shoe,* however, the product involved, shoe machinery, was not itself resold by plaintiffs. The Supreme Court's decision was based in part upon the difficulty of showing whether plaintiff shoe manufacturer's *pricing decisions for shoes* reflected the illegal overcharge.

> "Even if it could be shown that the buyer raised his price in response to, and in the amount of, the overcharge and that his margin of profit and total sales had not thereafter declined, there would remain the nearly insuperable difficulty of demonstrating that the particular plaintiff could not or would not have raised his prices absent the overcharge or maintained the higher price had the overcharge been discontinued. Since establishing the applicability of the passing-on defense would require a convincing showing of each of these virtually unascertainable figures, the task would

normally prove insurmountable. [Footnote omitted.] On the other hand, it is not unlikely that if the existence of the defense is generally confirmed, antitrust defendants will frequently seek to establish its applicability [thus requiring long and complicated proceedings]." 392 U.S. at 493, 88 S.Ct. at 2231.

Clearly the Court's purpose was to preserve the private antitrust suit and promote compensation to those injured. This purpose could not be achieved with the hindrance of a defense, the proof of which it felt would normally present "insuperable difficulty," but the mere allegation of which would often lengthen antitrust litigation beyond reasonable bounds.

On the other hand, the Court recognized

> ". . . that there might be situations—for instance, when an overcharged buyer has a pre-existing 'cost-plus' contract, thus making it easy to prove that he has not been damaged—where the considerations requiring that the passing-on defense not be permitted in this case would not be present." *Id.* at 494, 88 S.Ct. at 2232.

The Court thus left open for future decision cases in which the passing on of the illegal overcharge might be more readily demonstrable. Ours is such a case. Based on affidavits, the district court assumed that appellants could so show.[5]

---

5. The district court felt that the complexities of proof of damages, mentioned in *Hanover Shoe, supra,* were present in this case. 350 F.Supp. at 1372 & n. 1. The court said that if appellants were to make out a prima facie case of damages, then it could not prevent appellees from showing that in particular instances no overcharge was passed on. "This means, of course, an examination of each contract. Whatever else, the effect of *Hanover* and *Darnell-Taenzer* is to reject the generalism that because the first in the purchasing chain suffers an overcharge someone late in the chain suffers compensable damage." *Id.* at 1372 n. 2.

It may be that the Supreme Court has ruled out generalized damages claims. But

it has inferentially approved specific ones, and we cannot square this with the district court's own statement that "plaintiffs [appellants] can in some instances prove that the increased cost . . . was in fact borne by the plaintiffs." *Id.* at 1370. As we have said, the court has at its disposal several means of inquiring into each contract, if necessary, without the need to completely foreclose recovery on grounds of difficulty of trial. It has never been thought that an antitrust violation is irremediable because done on a grand scale. The Supreme Court spoke of "virtually unascertainable figures" associated with proof that a particular intermediary "could not or would not have raised his prices absent the overcharge or main-

The district court held "that an immediate purchaser may recover and that a remote purchaser may not even though the former suffers no money loss and the latter does . . .." 350 F.Supp. at 1372. The court relied heavily for that conclusion upon Southern Pacific Co. v. Darnell-Taenzer Lumber Co., 245 U.S. 531, 38 S.Ct. 186, 62 L.Ed. 451 (1918), a case under the Interstate Commerce Act. The Supreme Court discussed Darnell-Taenzer in its Hanover Shoe opinion, 392 U.S. at 488 n. 6, 490 & n. 8, 88 S.Ct. 2224, noting that it was a case in which "the possibility that plaintiffs had recouped the overcharges from their customers was held irrelevant in assessing damages." 392 U.S. at 490, 88 S.Ct. at 2230. At that point in its opinion, however, the Court was simply describing "where the matter stood in this Court when the issue came to be pressed with some regularity in the lower federal courts . . .." Id. at 491 n. 8, 88 S.Ct. at 2230. It appears obvious to us that the Supreme Court was not enshrining privity as a requirement of the antitrust laws. See Missouri v. Stupp Bros. Bridge & Iron Co. (W.D. Mo.1965), 248 F.Supp. 169, 171–175; Boshes v. General Motors Corp., 59 F.R. D. 589 (N.D.Ill.1973).

■ The Darnell-Taenzer case was decided at a time when privity was a requirement of tort law. Today, it stands at best for the concept that an offense is complete at the time of injury, regardless of the victim's later acts in mitigation. Note, 46 S.Cal.L.Rev. 98, 102–04, 109–10 (1972). Privity is not required in antitrust cases. In re Multidistrict Vehicle Air Pollution M.D.L. No. 31 (9 Cir., 1973), 481 F.2d 122 at 129; South Carolina Council of Milk Producers, Inc. v. Newton (4 Cir. 1966), 360 F.2d 414, 417–418, cert. den., 385 U.S. 934, 87 S.

Ct. 295, 17 L.Ed.2d 215 (1966); see Perkins v. Standard Oil Co. of Calif., 395 U.S. 642, 648–650, 89 S.Ct. 1871, 23 L.Ed.2d 599 (1969); Comment, 72 Colum.L.Rev. 394, 396–403; Note, 46 S. Cal.L.Rev. 98, 110 & n. 47 (1972). Recovery was allowed in a pre-Hanover Shoe case markedly similar to ours. Armco Steel Corp. v. North Dakota (8 Cir.1967), 376 F.2d 206, 210–211. Therefore, while Darnell-Taenzer may solidify an immediate purchaser's right to damages, it does not preclude recovery by ultimate purchasers. In fact, nowhere in Hanover Shoe does the Supreme Court mention standing, which is our problem herein.

Our case, then, involves "passing on," not as a defense, but as a theory of recovery in the nature of an offense. Here we are directly confronted with the policy favoring the allowance of recovery to appellants who can prove both the occurrence of an antitrust violation and that they each thereby incurred substantial damage. Speaking of the ultimate consumers in Hanover Shoe, who were retail purchasers of shoes, the Supreme Court noted that they would each have

" . . . only a tiny stake in a lawsuit and little interest in attempting a class action. In consequence, those who violate the antitrust laws by price fixing or monopolizing would retain the fruits of their illegality because no one was available who would bring suit against them. Treble-damage actions, the importance of which the Court has many times emphasized, would be substantially reduced in effectiveness." Id., 392 U.S. at 494, 88 S.Ct. at 2232.

In our case, this policy favors permitting appellants to demonstrate injury by reason of any passed-on overcharge. The district court squarely held that

---

tained the higher price had the overcharge been discontinued." Hanover Shoe, supra, 392 U.S. at 493, 88 S.Ct. at 2231. This was in relation to the liability issue, which in our case is obviated by the district court's assumption that appellants could prove an illegal overcharge which was passed on to

them. We have elsewhere mentioned the relaxed proof requirements on the damages issue in antitrust cases. The district court denied appellants standing on grounds of remoteness and judicial convenience, a third and distinct issue with which our opinion deals.

standing under § 4 of the Clayton Act is limited exclusively to first-line purchasers unless there is a pre-existing cost-plus contract, even assuming that second-line purchasers would be able to show in some instance that they were the ones who bore the burden of the illegal overcharge.[6] We think that result reads *Hanover Shoe* too literally.

We do not have a case of consumers who have only a minuscule interest in the outcome of the litigation. Instead, appellants are a large number of public consumers of liquid asphalt, who allege that illegal overcharges by appellees resulted in unlawfully high prices to them, for about three million tons of asphalt purchased in some 37,000 contracts. To permit so large a fish to escape the nets is unthinkable.

Moreover, most of the contractors who purchased from appellees and resold to appellants have not come forward to challenge these alleged violations. Counsel at oral argument pointed out that only one contractor in California,[7] and three in Oregon, have sued appellants—a very small percentage of those involved. No contractors have sued in the states of Arizona, Alaska, and Washington. It is most likely that the four-year statute of limitations, 15 U.S.C. § 15b, has run on those who have not sued. It is understandable that contractors might not sue, in view of (1) their alleged dependence upon appellees for their supply of asphalt, (2) the possibility that they earned a percentage profit on the overcharges, and (3) the control and interdependence alleged between appellees and the contractors. Thus if the present appellants could establish antitrust violations but were precluded from recovering, no one else would sue, and appellees would retain their assumedly illegal profits.

Appellees object that if appellants are permitted to recover, there is a danger of double recovery, since contractors would also have a cause of action. First, this is fallacious because it assumes that contractors will sue, when in fact they have not in the vast majority of these cases. Second, there is no reason why appropriate means cannot be found to properly apportion such damages as ultimately may be assessed, a matter which we shall mention again later. Third, *Hanover Shoe* was concerned with a defense to liability, not with

---

6. *See* note 3 *supra.* The issue herein has been raised in other cases. In Minnesota v. U. S. Steel Corp. (8 Cir. 1971), 438 F.2d 1380, 1384, the issue was not decided because it was not ripe, and necessary facts were lacking. In West Virginia v. Chas. Pfizer & Co., *supra*, 440 F.2d at 1086–1088, the Second Circuit reached a result similar to ours, in determining the proper apportionment of a $100 million settlement offer. The court did not reach the issue herein as a matter of standing, but its discussion is apt.

In Mangano v. American Radiator & Std. San. Corp. (E.D.Pa.1970), 50 F.R.D. 13, aff'd, 438 F.2d 1187, 1188 (3 Cir. 1971) (per curiam), dismissal was *affirmed* against ultimate purchasers, for failure to prove that the alleged overcharge was "a *causa sine qua non*" of any payment" they made. However, plaintiffs there had failed to comply with the district court's discovery order, and the case stands for the procedural point that failure to answer interrogatories may result in adverse determination of the issues which were the subject of that discovery.

In the same litigation, the claims of public bodies, who bought plumbing fixtures allegedly subject to illegal overcharges, were dismissed because the fixtures had been incorporated into buildings and reached plaintiffs only through several levels of intermediaries. Philadelphia Housing Authority v. American Radiator & Std. San. Corp. (E.D.Pa.1970), 323 F.Supp. 364 and 381. The court there found that the product had passed through several successive unrestrained markets, with independent pricing decisions at each different level. *Id.* at 385. Such facts indicate in their statement that that case was far different from ours.

A result similar to ours was reached in Boshes v. General Motors Corp., 59 F.R.D. 589 (N.D.Ill.1973); *see also* Comment, 72 Colum.L.Rev. 394 (1972); and was likewise reached in the case of In re Master Key Antitrust Litigation (D.Conn., August 23, 1973, M.D.L.Docket No. 45).

7. The California contractor's case is now pending on appeal in this Court. Copp Paving Co., Inc. v. Gulf Oil Co. (9 Cir.), 487 F.2d 202 argued the same day as our case.

standing, and not with apportionment of damages. We do not believe that the Supreme Court intended a *per se* rule with respect to passing on, as can be seen from the language quoted above. The Court was applying policy to a specific case. We do not think we should sacrifice enforcement of the antitrust laws in this case in favor of considerations of judicial economy when, we must assume, proof of passing on is at hand, and in triable form.

We have recently held that standing in antitrust cases involves a two-step analysis: "identification of the affected area of the economy and then the ascertainment of whether the claimed injury occurred within that area." In re Multi-district Vehicle Air Pollution M.D.L. No. 31 (9 Cir., 1973), 481 F.2d 122, at 129. (Petition for cert. filed sub nom. Morgan v. Auto Manufacturers Ass'n, No. 73–394, 41 U.S.L.W. 2685.)

■ We think that appellants here are clearly within the area of the economy which appellees reasonably could have or did foresee would be endangered by the breakdown of competitive conditions. Twentieth Century Fox Film Corp. v. Goldwyn (9 Cir. 1964), 328 F.2d 190, 220, cert. den., 379 U.S. 880, 85 S.Ct. 143, 13 L.Ed.2d 87; Conference of Studio Unions v. Loew's, Inc. (9 Cir. 1951), 193 F.2d 51, 54–55, cert. den., 342 U.S. 919, 72 S.Ct. 367, 96 L.Ed. 687 (1952). We have previously refused to defeat a cause of action for antitrust violations, merely because the violator chose to deal through intermediaries. Karseal Corp. v. Richfield Oil Corp. (9 Cir. 1955), 221 F.2d 358, 364–365; see Note, 46 S.Cal.L.Rev. 98, 110 & n. 47 (1972). The broad social object of the antitrust statutes is to end anticompetitive acts in the most comprehensive way. *Karseal, supra,* at 365. Where the operation and effect of anticompetitive practices was upon the market in which appellants dealt—the "target area"—we found liability. *Id.* at 364.

■ Here, appellees dealt through intermediaries, the contractors, who, it is claimed, were in various ways controlled by appellees. That is sufficient to bring this case within our holding in *Karseal, supra. See Multidistrict Vehicle Air Pollution, supra,* pp. 125 to 130. Even if the contractors were wholly independent of appellees, however, the Supreme Court has indicated that it may impose liability in those circumstances. Perkins v. Standard Oil Co. of Calif., 395 U.S. 642, 647–648, 89 S.Ct. 1871, 23 L.Ed.2d 599 (1969). The question of standing is a question of law for the court. The presence of intermediaries does not bar recovery.

■ On the other hand, the problems of damages and causation are questions of fact for the jury. Mulvey v. Samuel Goldwyn Productions (9 Cir. 1970), 433 F.2d 1073, 1075 n. 3. Evidence that a price advantage was "passed on, at least in part" to plaintiff's competitor, inter alia, provides sufficient substance for the question of causation to be submitted to the jury. *Perkins,* 395 U.S. at 648–649,[8] 89 S.Ct. at 1875.

The Court has held that a retailer who buys through a wholesaler could be considered a "customer" of the original supplier under the Clayton Act. FTC v. Fred Meyer, Inc., 390 U.S. 341, 88 S.Ct. 904, 19 L.Ed.2d 1222 (1968) (§ 2(d) of the Act); *Perkins, supra,* 395 U.S. at 647, 88 S.Ct. 1871 (§ 2(a) of the Act). Any other result "would allow price discriminators to avoid the sanctions of the Act by the simple expedient of adding an additional link to the distribution chain." *Perkins, supra,* at 647, 89 S.Ct. at 1874. This policy not to defeat recovery merely because a defendant has sold through intermediaries is also reflected,

8. The Supreme Court has often cautioned against the use of summary judgment in complex antitrust litigation. *E. g.,* Norfolk Monument Co., Inc. v. Woodlawn Memorial Gardens, Inc., 394 U.S. 700, 89 S.Ct. 1391, 22 L.Ed.2d 658 (1968) (per curiam); United States v. Diebold, Inc., 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962) (per curiam); Poller v. CBS, 368 U.S. 464, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962); see White Motor Co. v. United States, 372 U.S. 253, 263, 83 S.Ct. 696, 9 L.Ed.2d 738 (1963).

we believe, in *Hanover Shoe, supra*, where without the ultimate consumer at bar, the intermediary was allowed to recover. *See* West Virginia v. Chas. Pfizer & Co. (2 Cir. 1971), 440 F.2d 1079, 1087–1088, cert. den. sub nom., Cotler Drugs, Inc. v. Chas. Pfizer & Co., 404 U.S. 871, 92 S.Ct. 81, 30 L.Ed.2d 115.

■■ The antitrust laws are to be construed so as to achieve the broad goals which Congress intended to effectuate. *Fred Meyer, Inc., supra,* 390 U.S. at 349, 88 S.Ct. 904. One such policy goal is that there be no hiatus in the enforcement of these laws. *See* Perma Life Mufflers, Inc. v. International Parts Corp., 392 U.S. 134, 136, 138, 88 S.Ct. 1981, 20 L.Ed.2d 982 (1968). Each individual who is injured may sue. Hawaii v. Standard Oil Co. of Calif., 405 U.S. 251, 263, 92 S.Ct. 885, 31 L.Ed.2d 184 (1972). Thus, while we should not impose multiple liability upon defendants, nor give recovery to uninjured plaintiffs, neither should we bar recovery to those who can demonstrate that they bore the burden of the violation. We therefore hold that in the circumstances of this case, the granting of summary judgment to appellees on the damage claims was improper. Of course, facts await proof at trial.

Our holding is limited. We reverse the ruling below that the plaintiffs-appellants may not use "passing on" as a theory of recovery.

We do not risk the danger of multiple recovery. We discuss the problem in Section II, *infra*.

We note here that three limitations on antitrust actions will continue to operate so as to prevent or alleviate the problems raised by appellees: (1) standing, (2) proper allocation of damages, and (3) the usual rules of law relating to proof of causation and damages.

Standing, which we discussed *supra*, is still in the course of development in the law. *See* Conference of Studio Unions v. Loew's, Inc., *supra*; Karseal Corp. v. Richfield Oil Corp., *supra*; Twentieth Century Fox Film Corp. v. Goldwyn, *supra*; In re Multidistrict Vehicle Air Pollution M.D.L. No. 31, *supra*.

II.

*Damages*

Because on remand the district court may reach the question of damages, we elucidate somewhat further. Although appellants may have difficulty proving damages, our decision shows that we believe they should have an opportunity to do so. There is no reason to hold as a matter of law that they paid no part of the overcharge, and thus cannot recover —especially since that payment was assumed below.

To effectuate the policy of private antitrust enforcement, the cause should proceed on the liability issues, where injury is clearly not remote under the proximate causation analysis of the *Multidistrict Vehicle Air Pollution* case, and *Karseal, supra*. Problems of the apportionment of damages, as between an intermediary and an ultimate consumer, may be treated after liability is established, unless it be clear that no ultimate consumer was damaged. If an intermediary is shown to have been damaged by payment of an illegal overcharge which was not passed on to ultimate consumers, appellees' liability to ultimate consumers, to that extent, may be decreased.

■ Direct proof of payment is not required, of course, because to require it could prevent enforcement of the antitrust laws. Bigelow v. RKO Radio Pictures, Inc., 327 U.S. 251, 264–265, 66 S. Ct. 574, 90 L.Ed. 652 (1946). If an illegal overcharge is proved, then the court can inquire whether the intermediaries paid it. If not, then obviously appellants paid it, and should recover.

■ However, the amount of the overcharge is not necessarily the total amount of harm to plaintiffs. Purchasers may also have been damaged by being forced to turn to substitute goods, or to discontinue purchasing the price-fixed product. The essence of conspiracy is that the conspirators believe they will recover

more from the illegal overcharge than they will lose from diminished sales. *Hanover Shoe, supra,* 392 U.S. at 492–494, 88 S.Ct. 2224, indicates that the measure of damages includes lost profits. Thus, in passing-on cases, the intermediary should recover the amount of the overcharge that was not passed on, if the proof shows that the ultimate consumers did not pay it all, and any lost profits resulting from increased costs. The ultimate purchasers should obtain the remainder of the overcharge, and any other damages proximately caused. Facts raising reasonable inferences, based upon appropriate market data, should suffice to go to the jury on these questions. *See Bigelow, supra,* 327 U.S. at 264, 66 S.Ct. 574.

The trebling of damage awards should present no difficulty to the apportionment of damages. It is similar to punitive damages paid by a tortfeasor whose act injures several people. Single damages are assessed in the antitrust case, apportioned among plaintiffs if necessary, and then trebled. Damages must be trebled in this manner to effectuate the legislative judgment of Congress that *each* person injured should recover three times the damages he has suffered.[9]

It is urged that our decision for appellants would result in requiring appellees to twice pay treble damages. As we have said, the amount of the overcharge is not subject to double payment, because appellees' liability in that regard is to be apportioned after the amount of the overcharge is fixed. Further, each plaintiff (including appellants), be he intermediary or ultimate consumer, will be awarded only such further damages, including lost profits, as he may reasonably prove allocable to him.

We therefore see no problem of double recovery, and we believe that if this difficulty should arise in some other connection, the district court will be able to fashion relief accordingly. In addition to the court's control over its decree, numerous devices exist. We note that the consolidation of cases, which has already occurred, is one means of averting duplicitous awards. The short, four-year statute of limitations is another; later suits, after final judgment herein, are unlikely. 15 U.S.C. § 15b. In other cases, it may be that statutory interpleader, 28 U.S.C. § 1335, could be used by antitrust defendants to avoid double liability. If necessary, special masters may be appointed to handle complex cases. Finally, there are the doctrines of res judicata and collateral estoppel and procedures for compulsory joinder. The day is long past when courts, particularly federal courts, will deny relief to a deserving plaintiff merely because of procedural difficulties or problems of apportioning damages. *See Boshes, supra,* at 59 F.R.D. 599.

Reversed and remanded for further proceedings in accordance with this opinion.

---

9. 15 U.S.C. § 15 reads:
   "*Any person* who shall be injured . . . by reason of anything forbidden in the antitrust laws may sue therefor . . . and *shall recover threefold the damages by him sustained* . . . ." [Emphasis added.]

*See generally* In re Multidistrict Vehicle Air Pollution M.D.L. No. 31, *supra,* 481 F.2d at 122; Comment, 76 Colum.L.Rev. 394, 397 (1972).