# In re SUGAR INDUSTRY ANTITRUST LITIGATION.

## STOTTER & CO., INC., Appellant,

### v.

AMSTAR CORPORATION, Borden, Inc., and its Subsidiaries, Colonial Sugar Company, North American Sugar Industries, Industrial Sugars, Inc., Sugar Refinery of Palm Beach, Inc. (formerly Florida Sugar Refinery, Inc.), CPC International, Inc., Michigan Sugar Company, National Home Products Corporation, The National Sugar Refining Company, Savannah Foods and Industries, Inc., and SuCrest Corporation, Appellees.

### Nos. 77–1555 and 77–2606.

United States Court of Appeals, Third Circuit.

Argued Jan. 12, 1978.

Decided March 6, 1978.

Rehearing Denied July 5, 1978.

As Amended Aug. 14, 1978.

Harvey S. Kronfeld, Paul C. Madden, Hudson, Wilf & Kronfeld, Philadelphia, Pa., for appellant.

Robert M. Landis, Stephen A. Stack, Jr., Dechert, Price & Rhoads, Philadelphia, Pa., William E. Willis, James H. Carter, William M. Dallas, Jr., Sullivan & Cromwell, New York City, Frederick M. Porter, Chris G. Gunderson, Jr., Amstar Corporation, New York City, for Amstar Corp.

Theodore W. Flowers, Edward C. Mengel, Jr., White & Williams, Philadelphia, Pa., Walter W. Kocher, Edward A. Matto, c/o Borden, Inc., Columbus, Ohio, for Borden, Inc., Colonial Sugar Co., North American Sugar Ind., Industrial Sugars, Inc., Sugar Refinery of Palm Beach, Inc. (formerly Florida Sugar Refinery, Inc.).

John G. Harkins, Jr., Lloyd R. Ziff, Richard M. Bernstein, Pepper, Hamilton & Scheetz, Philadelphia, Pa., John E. Simpson, Miller, Beckmann & Simpson, Savannah, Ga., for Savannah Foods & Industries, Inc.

Benjamin M. Quigg, Jr., Morgan, Lewis & Bockius, Philadelphia, Pa., Gordon B. Spivack, John N. McBaine, Lord, Day & Lord, New York City, for CPC International, Inc.

Timothy D. Wittlinger, Hill, Lewis, Adams, Goodrich & Tait, Detroit, Mich., for Michigan Sugar Co.

Henry W. Cornell, III, Berg & Cornell, Buffalo, N. Y., for National Home Products Corp.

Robert L. Ellis, Jeffrey I. Klein, Goldstein, Shames, Hyde, Wirth, Bezahler & Cahill, New York City, for RSN Projects, Inc. (formerly The National Sugar Refining Co., Inc.).

Laurence Greenwald, Jay P. Mayesh, Stroock & Stroock & Lavan, New York City, S. Gordon Elkins, James A. Young, Stradley, Ronon, Stevens & Young, Philadelphia, Pa., for SuCrest Corp.

Before ADAMS and WEIS, Circuit Judges, and COOLAHAN, District Judge.*

## OPINION OF THE COURT

WEIS, Circuit Judge.

In this antitrust action it is alleged that defendant refiners of sugar have engaged in a conspiracy to fix the price of that product. At least two of the defendants use the sugar to manufacture candy which they sell to the plaintiff wholesaler. The question raised in this appeal is whether the plaintiff has run into an [Illinois] brick wall

in his efforts to secure treble damages arising out of his candy purchases. We conclude that plaintiff's action is not barred, and accordingly vacate a summary judgment entered in favor of the defendants.

The Sugar Industry Antitrust Litigation is complex and extensive, literally extending from coast to coast. It rests basically on allegations that major sugar refiners and others in the United States conspired to fix the prices of refined sugar in violation of § 1 of the Sherman Act, 15 U.S.C. § 1.[1]

In its complaint plaintiff Stotter & Co., Inc. asserted that it is entitled to recover treble damages under § 4 of the Clayton Act, 15 U.S.C. § 15, because of overcharges it paid in purchasing food products containing sugar refined or sold by defendants. Stotter is a Philadelphia area wholesaler of candy, beverage syrup, and other products. The 12 defendants refine and sell sugar in the eastern half of the United States, and several of them also manufacture food products containing sugar they refine. Stotter did not purchase sugar from any of the defendants but did buy candy from defendant Borden and from a subsidiary of defendant SuCrest. Stotter purchased other products such as soft drink beverage syrup from nondefendant manufacturers, who secured sugar from defendants.

Stotter's complaint was similar to many others in the Sugar Litigation alleging a combination and conspiracy to fix and raise prices.[2] However, unlike the others which

---

* Honorable James A. Coolahan, United States District Court for the District of New Jersey, sitting by designation.

1. The Sugar Litigation grew out of Sherman Act indictments and civil actions brought by the United States against sugar beet processors and sugar cane refiners, charging price-fixing of refined sugar in states west of the Mississippi River. The government's actions triggered the filing of numerous private suits covering both the western and eastern markets.

  In September, 1975, after finding a substantial dichotomy in the sugar industry between the east and west coasts in terms of defendants, market areas, and economic issues, the Judicial Panel on Multidistrict Litigation determined that the cases involving parties located east of the Mississippi River should be consolidated before Judge Cahn in the Eastern District

of Pennsylvania. *In re Sugar Industry Antitrust Litigation*, 399 F.Supp. 1397 (Jud.Pan. Mult.Lit.1975). This appeal involves only the eastern proceeding.

2. The Stotter complaint alleged that defendants had engaged in a combination and conspiracy:

 "a. To fix and raise the basis prices of refined sugar;

 b. To fix prepaid freight applications;

 c. To eliminate, reduce and prevent the granting of allowances to customers for refined sugar;

 d. To fix, raise, maintain and stabilize the effective selling price of refined sugar; and

 e. To eliminate or minimize off-list pricing in the sale of refined sugar."

Stotter filed on behalf of itself and a class of "all private persons and business entities in the

asserted injury because of excessive prices paid for refined sugar, Stotter claimed damages because it had been charged substantially more for various food products which contained sugar. The district court entered summary judgment against Stotter, holding that since it purchased only sugar-containing products, it was too "remote in the chain of distribution of refined sugar to make a claim for alleged overcharging . . . ."

Although judgment was entered on all claims, the court did discuss the difference between the situation in which Stotter purchased such products as candy directly from the defendants and that in which it bought sugar-containing products from nondefendants who did not refine sugar. As to the latter category, which might be termed indirect purchases, the court observed that plaintiff would be obliged to embark upon discovery with respect to each sugar-containing product sold by 70 separate suppliers—some who did not even manufacture the product.

In discussing purchases made directly from the defendants, the court said:

"The problem with the plaintiff's claim related to direct purchases of candy from defendants is it simply has not pleaded or proved (to the extent necessary to survive a Rule 56 motion) that a conspiracy to fix sugar prices by the major refiners extends to their own sugar-containing products."

On appeal, Stotter has limited the issue to the summary judgment only insofar as it affects the direct purchases of candy from defendants. Indeed, in the face of *Illinois*

*Brick Co. v. Illinois,* 431 U.S. 720, 97 S.Ct. 2061, 52 L.Ed.2d 707 (1977), plaintiff has no hope of success on the purchases from nondefendants.

Preliminarily, we observe that the plaintiff did plead, although not artfully or clearly, that it had purchased food products containing sugar refined or sold by the defendants.[3] The complaint itself could readily be amended to state unambiguously that purchases were made directly from some of the defendants. In their briefs in the district court on the motion for summary judgment, both parties commented on the plaintiff's direct purchases of candy from Borden. Accordingly, we believe that the district judge's comments as to pleading and proof were intended to reflect his view that the issue was lack of standing as a matter of law, rather than simply a pleading or evidentiary deficiency. Had it been the latter, opportunity for discovery would have been granted.

We come then to the question in this case. The Supreme Court's decision in *Illinois Brick Co. v. Illinois, supra,* bans Clayton Act suits by persons who are not direct purchasers from the defendant antitrust violator. Does the decision also bar a suit by a plaintiff who purchases directly from the alleged offender but buys a product which incorporates the price-fixed product as one of its ingredients? Stated another way, does the proscription against recovery for indirect purchases extend to the product as well as the buyer?

*Illinois Brick* held that the "passing on"[4] defense which was prohibited by *Hanover*

Market who, during the period in suit, purchased sugar or any food product containing sugar in any form . . . for wholesale distribution or resale." The district court declined to certify Stotter as a class representative. *In re Sugar Industry Antitrust Litigation,* 73 F.R.D. 322, 340 (E.D.Pa.1976). That ruling has not been appealed.

3. Specifically, the complaint alleged:

"22. During the period in suit to the present, plaintiff and members of the Class it represents have purchased various food products containing sugar refined or sold by one or more of the defendants.

INJURY TO PLAINTIFF AND CLASS
23. As a result of the foregoing, plaintiff and other members of its Class have been injured in their businesses and other property by having been charged substantially higher prices for various food products than they would have paid and by having a smaller volume of business than they would have had in the absence of such violations."

4. "Passing on" describes the action of an overcharged buyer who passes the extra expense on to those who buy from him. "Defensive passing on" refers to efforts by antitrust defendants to show that a particular plaintiff was not injured because he had foisted the inflated

*Shoe, Inc. v. United Shoe Machinery Corp.,* 392 U.S. 481, 88 S.Ct. 2224, 20 L.Ed.2d 1231 (1968), should also be applied in a correlative fashion to a plaintiff's case—that the pass-on rule should apply equally to plaintiffs and defendants, 431 U.S. at 730–31, 97 S.Ct. 2061. The Court grounded its conclusion on several bases, including the possibility of exposing the defendant to multiple liability and the evidentiary complexities that would arise in apportioning the overcharge among those in the chain who had suffered injury. The Court also expressed concern that if the direct purchaser could not make a full recovery of the overcharge, the wrongdoer would be able to keep some of the fruits of its illegality. Based on this reasoning, the Court held that the plaintiff, which purchased a completed building, was not permitted to sue the manufacturer of concrete block which had been incorporated into the structure. In reaching this determination, the Supreme Court noted that the concrete block had passed through two separate levels in the chain of distribution before reaching the plaintiff:

> "[T]he evidentiary complexities and uncertainties involved in the defensive use of pass-on against a direct purchaser are multiplied in the offensive use of pass-on by a plaintiff several steps removed from the defendant in the chain of distribution. The demonstration of how much of the overcharge was passed on by the first purchaser must be repeated at each point at which the price-fixed goods changed hands before they reached the plaintiff." 431 U.S. at 732–33, 97 S.Ct. at 2068.

> \*   \*   \*   \*   \*   \*

> "Permitting the use of pass-on theories under § 4 essentially would transform treble-damages actions into massive efforts to apportion the recovery among all potential plaintiffs that could have absorbed part of the overcharge—from direct purchasers to middlemen to ultimate consumers." *Id.* at 737, 97 S.Ct. at 2070.

Defendants here argue that the primary reason for the result in *Illinois Brick* was the Court's desire to avoid further complexity being introduced into antitrust litigation. Although that case concededly involved a somewhat different situation, defendants contend the rationale nevertheless should control. Plaintiff responds that if it cannot sue Borden for the overcharge incorporated in candy brought about by the price-fixing of sugar, then no one can. Any other entity in the product chain of distribution would necessarily be an indirect purchaser and ineligible under *Illinois Brick.* Thus, Borden would escape liability for fixing the price of all the sugar it incorporated into candy.

*Illinois Brick* dwelled on the complicated calculations which would be common in antitrust cases if the passing-on prohibition were not invoked.[5] The Court explained:

> "The principal basis for the decision in *Hanover Shoe* was the Court's perception of the uncertainties and difficulties in analyzing price and output decisions 'in the real economic world rather than an economist's hypothetical model,' 392 U.S. at 493, 88 S.Ct. 2224 and of the costs to the judicial system and the efficient enforcement of the antitrust laws of attempting to reconstruct those decisions in the courtroom." 431 U.S. at 731–32, 97 S.Ct. at 2068.

As the defendants here point out, the product which plaintiff purchased competes not with sugar, but with other candy, and more than one ingredient determines the price. To this extent, there will be some additional complications underlying the damage claims. However, this must not be allowed to obscure the fact that the plaintiff did purchase directly from the alleged violator. True, the price-fixed commodity had been

price onto his own customers. "Offensive passing on" is used to characterize plaintiffs' strategy proving that an overcharge was imposed upon them by buyers closer to the defendant in the chain of distribution. *See Illinois Brick v. Illinois,* 431 U.S. 720, 723, 97 S.Ct. 2061, 52 L.Ed.2d 707 (1977); Sullivan, Handbook of the Law of Antitrust § 252 (1977).

**5.** The Court's concern over adding to the difficulties in already complex antitrust litigation is evident throughout the opinion. *See* 431 U.S. at 730–33, 737, 740–41, 97 S.Ct. 2061.

combined with other ingredients to form a different product. But just as the sugar sweetened the candy, the price-fixing enhanced the profits of the candy manufacturers. The situation is the same as if the general contractor which sold the building to the plaintiff in *Illinois Brick* were the manufacturer of the concrete block which went into the structure. In that situation, the concern which the Supreme Court expressed about the proration of overcharge among a number of entities in the chain would not have been present.

Nor is that problem of allocation among various distributors present in the case *sub judice*. Plaintiff is a direct purchaser and, therefore, entitled to recover the full extent of the overcharge. As one of its basic premises, *Illinois Brick* held that "the overcharged direct purchaser, and not others in the chain of manufacture or distribution is the party 'injured in his business or property' within the meaning of the section". 431 U.S. at 729, 97 S.Ct. at 2066.[6] The difficulty in computation here is not in parceling out damages among entities in the chain, but in isolating the excessive cost of one ingredient which goes into the product purchased by the plaintiff. Conceivably, in some cases that may be a problem not easily solved, but here we think it not serious enough to invoke the obstacle of *Illinois Brick*. It is most likely ascertainable by examination of the defendant's records and depositions of its employees. Only one party in the distributive chain will be involved, rather than many.

◼ We are also influenced by the realization that to deny recovery in this instance would leave a gaping hole in the administration of the antitrust laws. It would allow the price-fixer of a basic commodity to escape the reach of a treble-dam-

age penalty simply by incorporating the tainted element into another product. Thus, a refiner who illegally set the price of sugar could shield itself by putting all of the sugar into a new product, a syrup, simply by adding water and perhaps a little flavoring. We do not think the antitrust laws should be so easily evaded. *See The Supreme Court, 1976 Term*, 91 Harv.L.Rev. 72, 221, 230 (1977).

*Illinois Brick* did not purport to provide any such escape. The opinion was at pains to point out that all of the overcharges could be collected by direct purchasers, the parties the Court believed most likely to take action against price-fixers. To adopt the defendants' position in the case at bar, however, would permit them to by-pass the threat of a treble-damage remedy[7] and would be contrary to the spirit of the antitrust laws, as expressed by the Court in *Perma Life Mufflers, Inc. v. International Parts Corp.*, 392 U.S. 134, 139, 88 S.Ct. 1981, 1984, 20 L.Ed.2d 982 (1968): "the purposes of the antitrust laws are best served by insuring that the private action will be an ever-present threat to deter any one contemplating business behavior in violation of the antitrust laws." *See also Pfizer, Inc. v. Government of India*, 434 U.S. 308, 98 S.Ct. 584, 54 L.Ed.2d 563 (1978).

◼ We see no need to differentiate between the sales by a division of Borden and those by a subsidiary of SuCrest. A division of a corporation is not a separate entity but is the corporation itself. Although the subsidiary does have a separate legal existence, it is owned by the parent company, and would not ordinarily sue it. After considering all of the facts in this case, we conclude that, at least for this purpose and in this context, the subsidiary

---

**6.** Granting Stotter standing is consistent with our decision in *Bravman v. Bassett Furniture Industries*, 552 F.2d 90 (3d Cir. 1977) and *Cromar Co. v. Nuclear Materials & Equipment Corp.*, 543 F.2d 501 (3d Cir. 1976). Analyzing the relationship of the parties, the alleged effect of the violation upon the plaintiff and the nature of the industry leads to the conclusion that plaintiff is entitled to protection under the antitrust laws.

**7.** Obviously, we express no view on whether there was price-fixing involved in the case. Because of the nature of the legal problem involved and the posture in which the case reaches us, we have assumed liability on the part of the defendants only *arguendo*—not in actuality.

should be treated as the alter ego of the parent. *Cf. Perma Life Mufflers, Inc., supra.* To adopt any other view would invite evasion by the simple expedient of inserting a subsidiary between the violator and the first noncontrolled purchaser.[8] The Supreme Court anticipated this situation in *Illinois Brick*'s now famous footnote 16, commenting on exceptions to nonuse of defensive passing on: "Another situation in which market forces have been superseded and a pass-on defense might be permitted is where the direct purchaser is owned or controlled by its customer." *Illinois Brick, supra*, 431 U.S. at 736, 97 S.Ct. at 2070. Mirroring that exception to offensive passing on reflects the situation here where the direct seller is owned by the alleged price-fixer. We conclude, therefore, that claims have been properly asserted against Borden and SuCrest.

On the record before us, we are hesitant to determine that other defendants may have sold products directly to the plaintiff. That inquiry should be made by the district court. Moreover, we decide no more than that the plaintiff is entitled to present its claims and now must prove not only that there was a conspiracy but also that it harmed plaintiff. Accordingly, the judgment of the district court will be vacated and the matter remanded for further proceedings consistent with this opinion.

## OPINION SUR PETITION FOR PANEL REHEARING

WEIS, Circuit Judge.

After petitions for rehearing before the court in banc and, alternatively, before the panel were submitted, further argument was had before the panel. Because of the positions taken by the parties, we think that further comment from us is appropriate.

The appeal was originally submitted to us on a narrow question—did Stotter's status as a direct purchaser of candy entitle it to pursue antitrust claims based on price-fixing of sugar which was incorporated in the candy? We concluded that suit could be maintained where a refiner, or its subsidiary used its sugar in manufacturing candy which it sold to the plaintiff.

In its petition for rehearing, Borden asserts as a factual matter that sugar refined by Borden was not used in manufacturing the candy it sold to Stotter. The petition is supported by an affidavit prepared after this court's opinion had been filed. SuCrest, however, did not ask for rehearing and did not join in Borden's petition. Since the affidavit of Borden was not part of the record in the district court, we do not consider it here. *See System Operations, Inc. v. Scientific Games Development Corp.*, 555 F.2d 1131, 1144 n.17 (3d Cir. 1977); *Jaconski v. Avisun*, 359 F.2d 931, 936 n.11 (3d Cir. 1966). Moreover, Borden's petition raises a ground it did not urge in its brief or at oral argument.

The district court decided the issue before it as one of law: as to the sugar-containing products it purchased, Stotter was "too remote in the chain of distribution of refined sugar to make a claim . . .." At the original oral argument, counsel for the defendants accurately stated that the question was one of law and spoke of transfer of sugar from one operating unit of a company to another unit of the same company. The issue before us, therefore, was whether Stotter was permitted to maintain a claim as a direct purchaser from Borden of candy manufactured with sugar Borden had refined. The factual question of whether the candy contained Borden sugar was not ar-

---

**8.** Cases in which a plaintiff was separated from a price-fixer by only the violator's subsidiary have been rare, and are distinguishable from the majority of cases where intervening levels in the distribution chain are not controlled by defendants. *See In re Western Liquid Asphalt Cases*, 487 F.2d 191, 199–200 (9th Cir. 1973); Handler & Blechman, Antitrust and the Consumer Interest: The Fallacy of *Parens Patriae* and a Suggested New Approach, 85 Yale L.J. 626, 645 n.97 (1976); Note, Scaling the Illinois Brick Wall: The Future of Indirect Purchasers in Antitrust Litigation, 63 Cornell L.Rev. 309, 327 (1978). *Cf. Perkins v. Standard Oil Co.*, 395 U.S. 642, 647–48, 89 S.Ct. 1871, 23 L.Ed.2d 599 (sales through controlled subsidiaries deemed a mere formal exchange in a Robinson-Patman situation).

gued or briefed but was rather assumed as a predicate for the legal problem under consideration. Borden, or any other defendant, of course, is not precluded from now contending on remand to the district court that none of its refined sugar was in the products it sold to Stotter, that it did not engage in a price-fixing conspiracy or that plaintiff did not sustain damages. The district court did not make findings on these factual matters but accepted them *arguendo* in concluding that Stotter was too far down the chain of distribution to maintain an action.

■ In the course of our opinion, we referred at times to the plaintiff's adversaries as "defendants," and Stotter now contends that we have determined that a claim may properly be asserted against all of the alleged co-conspirators. Stotter reasons that all co-conspirators are jointly and severally liable and, therefore, damages sustained by a direct purchaser from one may be recovered from all or any one of the conspirators. Another variation of this issue was advanced by Stotter during the post-opinion argument; whether Stotter was entitled to recover from Borden or SuCrest for purchases of candy made with sugar received from another alleged co-conspirator, *e. g.*, an unaffiliated company, such as Amstar Corporation. Although these are important points, they were not raised in the district court nor briefed on appeal. We therefore follow our general procedure and do not reach those legal problems at this juncture. *See Singleton v. Wulff*, 428 U.S. 106, 120, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976). They are properly matters for the consideration of the district court in the first instance, if they become material to the litigation.

The petition for rehearing will be denied and the case is remanded to the district court for further proceedings.